[L. A. No. 4610.   Department Two.—December 31, 1918.]

## A. E. NICKERSON, Appellant, v. THE COUNTY OF SAN BERNARDINO et al., Respondents.

COUNTIES—PURCHASE OF LAND FOR HOSPITAL SITE—ACTION BY TAX-PAYER FOR RECOVERY—EVIDENCE—EXCESSIVE ACREAGE AND PRICE—PROOF PROPERLY EXCLUDED.—In an action by a taxpayer against a county, certain of its officers, and certain land owners to recover from the defendants other than the county, but for the county's benefit, money expended and paid for the purchase of lands for a hospital site, an offer on the part of the plaintiff to prove by one of the supervisors who had voted for the purchase that the greater portion of the land was purchased for a county farm, that the amount of land purchased greatly exceeded in acreage the amount of land necessary for hospital grounds, and that the money paid therefor was grossly in excess of its value, was properly excluded.

ID.—MUNICIPAL BODY—LEGISLATIVE ACTION—REVIEW BY COURTS.—When the legislature has committed to a municipal body the power to legislate on given subjects, or has committed to it judgment or discretion as to matters upon which it is authorized to act, courts of equity have no power to interfere with such a body in the exercise of its legislative or discretionary functions.

ID.—PURCHASE OF HOSPITAL SITE—LEGISLATIVE POWER.—The power conferred on the board of supervisors by law relative to the purchase of land for a hospital site, the erection of hospital buildings and their equipment, is both legislative and discretionary.

ID.—NOTICE OF INTENTION TO PURCHASE—PUBLICATION—JURISDICTIONAL PREREQUISITE.—The publication of a proper notice of intention to purchase land for a hospital site by the board of supervisors is a jurisdictional prerequisite to the power of the board to act in the matter.

ID.—NAME OF PERSON FROM WHOM PROPERTY TO BE PURCHASED—TENANTS IN COMMON—SUFFICIENCY OF NOTICE.—Under subdivision 6 of section 4041 of the Political Code, which requires a notice of intention to state among other things the name of the person from whom the purchase is to be made, a notice is not fatally defective because of the omission to mention the name of the wife, where the land was owned by the husband and wife as tenants in common, since the code section does not require a statement of the names of the owners of the property.

ID.—NAME OF DECEASED PERSON—PENDENCY OF ADMINISTRATION PROCEEDINGS—VALID NOTICE.—The statement in such notice that the name of the person from whom the property was to be purchased was

a deceased person, is not fatal, where the property was in course of administration.

ID.—STATEMENT OF PRICE.—Under the provision of the code requiring the published notice to state the price to be paid for the property, the use of the term "more or less" in stating the acreage is not fatal.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goodcell & Goodcell and Cecil H. Phillips, for Appellant.

T. W. Duckworth, John L. Campbell, and Ralph E. Swing, for Respondents.

LORIGAN, J.—The plaintiff, as a taxpayer of San Bernardino County, brought this action against said county and the other defendants, consisting of three members of its board of supervisors, its county treasurer and county auditor, together with the owners of certain lands, the purchase of which is involved in this suit.

It appears that on September 10, 1914, the board of supervisors of San Bernardino County authorized and called a special election and submitted to the voters of the county the question of incurring a bonded indebtedness in the sum of one hundred and fifty thousand dollars, the money raised thereby to be expended "for purchasing necessary county hospital grounds, to construct thereon necessary county hospital buildings, and equip and furnish the same with necessary appliances, furniture and hospital equipment." The bonded indebtedness was favorably voted, bonds were issued and sold by the board of supervisors, the proceeds placed in the hospital improvement fund, and thereupon the said board called for the submission to it of sealed proposals for furnishing tracts of land for a hospital site. In response to said call C. J. Anderson, one of the defendants, submitted a proposal for the sale to the county of a tract of land containing 93½ acres, the offer stating that the entire tract consisted of several tracts of land owned by said Anderson and several others named in the proposal and in whose behalf the offer was made. The price was stated as $645 per acre.

On June 2, 1915, the board of supervisors, by resolution, declared its intention to purchase the said land and thereupon published a notice of intention to do so. Thereafter, and in due course, it passed a resolution purporting to consummate the purchase of the land at the price stated, which price was to be paid when a favorable report on the title to the property was made by the district attorney. At the same time it ordered the money to be placed in escrow to pay for the land.

It is then alleged in the complaint that the land so purchased contains more than 60 acres that are not necessary for necessary hospital grounds and that the board purchased this tract of land of 93½ acres for the purpose of using all of the portion thereof not necessary for hospital grounds for a county farm; that it was the intention of the members of the board of supervisors and those who voted for the purchase of said tract to purchase it for necessary hospital grounds and for use by said county as a county farm; that 30 acres is all the land necessary for necessary county hospital grounds, and that the amount of money which would be left in the treasury after the purchase of said tract of land exceeding 30 acres will be wholly inadequate and insufficient to carry out and fulfill the purpose for which said bonds were issued and sold. It was further alleged by plaintiff that notice was served on the defendants, the treasurer and auditor of the county, that the purchase of said land was illegal and that neither of them should authorize or pay any money on account thereof and that each, notwithstanding said notice, paid the sum of $46,968.90 on account of the purchase of said land; that no claim was ever filed with the board of supervisors in the manner required by law for the payment of said money, nor was its payment authorized or allowed by the board of supervisors after the presentation to them of a claim therefor; that unless restrained from so doing said auditor and treasurer intend to pay over the balance of $13,338.60 for the purchase of said property. It is also alleged that $645 an acre, agreed to be paid as the purchase price of said land, is greatly in excess of its value, and that at the time this action was commenced deeds to the land in favor of the county had been made and delivered to it by the various owners of the tracts of land purchased except one. This one consisted of the property of the

J. A. Anderson estate. A deed to the county of that land had
been executed by all the heirs of said estate except one, whose
whereabouts was unknown, and proceedings were then being
taken in the estate of said J. A. Anderson to have a probate
sale of said Anderson tract made to the county, thus vesting
the title in the county against the absent heir; that it was
this Anderson tract for which the $13,338.60 was still to be
paid from the hospital fund. The prayer of the complaint
was that plaintiff recover from the defendants other than the
county of San Bernardino, but for its benefit, the moneys ex-
pended and paid for the purchase of the various tracts of
land of which conveyances were made to the county; for a
decree restraining the payment of any money for the
Anderson tract, and for general relief.

The defendants, in their answer, denied all the material
allegations of the complaint upon which plaintiff asserted a
right of action against any of them, and denied that the land
purchased was not necessary for necessary hospital grounds;
they averred that a tract of land of 28.5 acres, theretofore
used by the county for hospital grounds, was inadequate, and
that at the time of the purchase of the land in question the
board of supervisors found and determined that the amount
of land purchased was necessary for necessary county hospital
grounds, and denied that the land purchased, or any part of
it, was purchased to provide the county with a county farm,
or for any other purpose than as specified in the proceedings
authorizing its purchase.

On the issues joined the cause went to trial, which resulted
in a motion of defendants for a nonsuit being granted and a
judgment of nonsuit accordingly entered, from which plain-
tiff appeals.

Appellant makes several points for a reversal which, how-
ever, may be considered under two general heads which are,
first, that the court erred in refusing to allow him to intro-
duce certain testimony; and, secondly, in refusing to sustain
appellant in his attacks upon the validity of certain proceed-
ings of the board of supervisors and the action of the other
county officers defendant.

As to the claim of error in rejecting certain testimony.
Appellant called as a witness one of the members of the board
of supervisors, who had voted for the purchase of the land
in question, and sought to prove by him that the greater

portion of said land was purchased for a county farm; that the amount of land purchased greatly exceeded in acreage the amount of land necessary for necessary county hospital grounds, and that the money paid for the land was grossly in excess of its value. The court sustained objections to this line of testimony.

It is not necessary to enter into any extended discussion of this assigned error. The ruling of the court was clearly within a well-recognized principle of law controlling the power of courts with respect to the review of proceedings of municipal bodies acting in their legislative or discretionary capacities. When the legislature has committed to a municipal body the power to legislate on given subjects or has committed to it judgment or discretion as to matters upon which it is authorized to act, courts of equity have no power to interfere with such a body in the exercise of its legislative or discretionary functions. That the power conferred on the board of supervisors by law relative to the purchase of land for a hospital site, the erection of hospital buildings and their equipment, was both legislative and discretionary in character is not open to dispute. The law cast upon the board the duty of determining whether in its judgment the public necessity required that the county should acquire a new county hospital and conferred upon it the power necessary to accomplish this if it should so determine. The money to do so was, it is true, to be furnished through the action of the voters of the county, but it was left to the board to determine how much money would be needed to acquire a site and construct the hospital buildings and to determine the quantity of land necessary for such site; to call for proposals of land from which to make a selection; to make the selection and determine the price which should be paid for it, and to adopt and approve the style and extent of the buildings to be erected upon the proposed site. All these matters were committed by the statute solely to the board, and their determination involved both legislative action and the exercise of discretion, neither of which was subject to review or control of any court. Whether, in the exercise of legislative powers, a board acts wisely or unwisely is no concern of the courts. They cannot enter the board room and substitute their judgment for that of the board nor interfere at all with its action unless the board is exceeding its legislative powers, or its judgment or discretion is being fraud-

ulently or corruptly exercised. This whole subject is considered in the case of *Hopping* v. *City of Richmond*, 170 Cal. 605, [150 Pac. 977], and reference is made to this authority for further discussion of the subject.

There is no fraudulent or corrupt conduct asserted against the board of supervisors in making the purchase of the hospital site. All the allegation respecting it is that the quantity of land purchased is more than is necessary for necessary hospital grounds; that the purchase of the entire tract was made to provide both necessary hospital grounds and land to be used as a county farm; and that it was the intention of the board of supervisors and its purpose, that all that portion of the entire tract not necessary for county hospital grounds was to be used as a county farm or for other purposes. This is not an allegation of fraud or corruption in legislative action or abuse of discretion respecting the purchase. What is in effect alleged is that all the land purchased was purchased with an intention of using that portion of it that was not necessary for a hospital site for a county farm and that 60 acres was all that was necessary for a hospital site; in short, that the board purchased more land than was necessary for a hospital site with the intention of devoting the surplus to a county farm. Now, it appears from the complaint itself that as to this land purchased the board, by its resolution, declared that this purchase of the entire tract was necessary for county hospital grounds. The truth of this resolution plaintiff sought to attack by the testimony of a member of the board of supervisors which passed it, and his complaint is that he was not permitted to do so. We think, however, the court properly refused to permit the witness to do so. The resolution passed was binding on the board and represented its official action on the subject embraced within it, and the simple secret intention of a member of the board or his extraneous expression concerning the use to which, in the future, some part of the land purchased might be devoted will not be permitted to impeach the integrity of the official intention and purpose of the board disclosed by its records. There is nothing in the acreage of the tract purchased itself to warrant the slightest inference that it was in excess of the quantity necessary for a hospital site. As such public institutions are to be used by a county indefinitely, the board in providing for them must consider not only the present,

but the future needs of the county, arising from the certainty of always having the sick and afflicted to care for with the added certainty that as the population of the county increases this public duty will increase with it. No restriction is placed on the board by the statute as to the quantity of land it shall purchase or the character of the buildings it shall erect for county hospital purposes. That matter is committed entirely to the judgment and discretion of the board, and when, in the exercise of such judgment and discretion, it determines that a certain quantity of land is necessary for a site its conclusion must prevail and is not subject to review or control of the courts.

As to the points made by appellant concerning the validity of certain proceedings on the part of the board of supervisors and the action of the treasurer and auditor of the county. Starting with the proposition which is, of course, true, that the publication of a proper notice of intention to purchase land for a hospital site by the board of supervisors was a jurisdictional prerequisite to the power of the board to act in the matter (*Winn* v. *Shaw*, 87 Cal. 631, [25 Pac. 968]), it is contended by appellant that the public notice of intention to purchase given in this matter was defective in some essential particulars. Subdivision 6 of section 4041 of the Political Code requires such notice of intention to state among other things the price to be paid for the property and the name of the person from whom the purchase is to be made, and, it is claimed by appellant, that as to these matters they were not contained in the notice. While counsel makes this broad claim, it is evident on examination of the record that what he really claims is not that these matters were entirely omitted from the notice, but only that they were defectively stated. But in this we do not agree with him. The purpose of the law in requiring these matters and others to be stated in the notice is to give the taxpayers, upon whose property the burden of taxation for the future payment of the debt entailed for the purchase of the property would fall, full information of what was intended to be done in order that they might determine whether they would or would not attend the meeting of the board when the time for the consummation of the purchase was set and protest or object to the purchase.

Now, as to the points of appellant. As a matter of fact the notice contained the names of the persons from whom the

board of supervisors declared its intention to purchase as
contained in the proposal to sell made by C. J. Anderson to
the board in his own and on behalf of the others agreeing to
the terms of that proposal earlier referred to in this opinion.
It appears, however, that as to one of said tracts offered it
was owned as tenants in common by Frank Parmenter and
his wife, and the name of the husband was alone mentioned
as the party from whom the tract was to be purchased as it
was alone mentioned in the proposal to sell.   Appellant in-
sists that a failure to mention the name of the wife rendered
the notice fatally defective.   But this amounted only to a
failure to state in the notice the name of one of the owners of
this particular tract, and the section does not require a state-
ment of the names of the *owners* of the property proposed to
be purchased to be stated in the notice, but only the names of
parties from whom it is its intention to purchase.   *Non
constat* but that the husband who had offered the common
property for sale had arranged to give good title before mak-
ing the offer to sell.   Anyhow, he was the party who offered
the property for sale, and was the party properly to be men-
tioned from whom the board intended to purchase this partic-
ular tract.   If, when it came to consummating the sale, Par-
menter could not give a good title, that was another matter, but
it could not affect the validity of the published notice.   Con-
sidering, too, the nature of the title of the Parmenters, the
mention of him as the person from whom the purchase of
that tract was to be made would, in any event, fulfill the pur-
pose of the statute.   The notice contained a description of all
the property intended to be purchased, including the tract
owned by the Parmenters in common.   No fraud or imposi-
tion could under such circumstances possibly be practiced on
the taxpayers of the county by the omission of the name of
one cotenant in the tenancy.   It does not approach a case
where there is the omission to at all mention the name of a
person from whom a particular tract is to be purchased.   It
may be that in such a case a description of the property by
governmental subdivisions or courses and distances, without
giving the name of the owner or person from whom its pur-
chase was to be made, would not give information to the tax-
payer of the exact location of the property as readily or
accurately as if in connection with the description the name
of the party from whom the purchase is to be made, who is

generally the owner, was mentioned in connection with the description. Here, however, the notice subserved just this purpose. It gave a description of the property and the name of the party from whom it was to be purchased, and who was in fact one of the owners. It gave the taxpayer all the information necessary for his guidance in determining what action he should take on the contemplated purchase of the Parmenter tract with the others, and, hence, constituted a fair and substantial compliance with the statute.

The notice of intention to purchase also contained the name of R. J. Anderson as one of the parties from whom a tract, alleged to be owned by him and which was offered to the board with the other tracts, was to be purchased. It appears that R. J. Anderson was dead at the time and that his estate was unsettled. The property stood on the records as belonging to R. J. Anderson when he died, and was property of his estate when it was offered by his representatives through C. J. Anderson, who offered all the tracts. The only omission there was in the notice as to this property was an omission to say that the property contemplated to be purchased was property of the estate of R. J. Anderson. No taxpayer could be misled by this omission. He had sufficient information from its being designated as property of R. J. Anderson to find out all about the particular owners of it if he thought that matter important. In this, as with respect to the Parmenters, we think there was a substantial compliance with the statute, and that the omissions complained of were not in any respect fatal to the validity of the notice.

It is further insisted that the notice contained no statement of the price to be paid for the property to be purchased. This is based on the fact that the term "more or less" is used in stating the aggregate acreage of the tract to be purchased. This contention is extremely critical. It is universally held that the use of the term "more or less" in notices of a statement of acreage of real property does not render the description uncertain. This being true, and the amount to be purchased being stated at 93½ acres "more or less," and the price stated at $645 per acre, mere computation on the part of the taxpayer would give him reasonable and satisfactory information as to the price to be paid for the property.

Lastly, it is claimed by appellant that the conduct of the auditor and treasurer, the one in auditing, the other in pay-

ing, the several warrants on the hospital improvement fund in the county treasury, was illegal, subjecting each to liability for restoration of the money to the fund. In this regard it is insisted that sections 4074, 4075 and 4076 of the Political Code, which require all claims against the county to be presented to the board of supervisors for allowance and payment applied to the purchase price to be paid to the several owners of the land purchased. In the proceedings for the purchase of the land the board of supervisors had made an order directing payment of the price of the land to be made to the owners out of the hospital improvement fund as soon as deeds thereto were ready for delivery to the county, and when the deeds were delivered the auditor and treasurer paid over the purchase price thereof without the presentation of any claims to the board of supervisors, or further order for their payment, other than the general one above referred to. Without discussing the relevancy of the sections quoted to claims of this character it is sufficient for present purposes to say that appellant is not in a position to raise the point he makes. No possible injury to him or to any taxpayer arose or could arise from the payments being made as they were. The county got the land it purchased, and it paid the owners the prices it had agreed to pay for it, and it is immaterial now whether there was a strict compliance with the statute in the method of payment or not. Any deviation from a prescribed method under the circumstances was merely an irregularity and harmless.

The judgment appealed from is affirmed.

Wilbur, J., and Melvin, J., concurred.