[Civ. No. 20231. Second Dist., Div. Three. Dec. 13, 1954.]

WALTER RANSOM et al., Appellants, v. THE LOS ANGELES CITY HIGH SCHOOL DISTRICT et al., Respondents.

Axelrad & Sevilla for Appellants.

Harold W. Kennedy, County Counsel, William E. Lamoreaux and Clarence H. Langstaff, Deputy County Counsel, for Respondents.

Roger Arnebergh, City Attorney, Charles F. Reiche, Assistant City Attorney, and Spencer L. Halverson, Deputy City Attorney, as Amici Curiae on behalf of Respondents.

SHINN, P. J.—The plaintiffs appeal from a judgment of dismissal of a taxpayers' suit brought to enjoin the intended dedication of a right of way by defendant Los Angeles City High School District, and to enjoin the intended expenditure of funds by defendant district for improvement of the same.

The plaintiffs, Walter Ransom, Ab Waxman, William Burroughs, Bernard Jackson, Louise Morehouse, Elyse Byler and Marie Long are resident taxpayers in Los Angeles City High School District. The defendants are the district and the individual members of the Board of Education for said district.

On July 30, 1953, the defendant board, by resolution, declared its intention to dedicate to the city of Los Angeles a portion of the Palms Junior High School property as a right of way for public street purposes. The right of way would extend Ocean Park Avenue through the middle of the present Junior High School site. On August 3, 1953, certain expenditures in connection with the dedication and improvement of this street were approved by the board. The appellants seek to enjoin this dedication and expenditure of funds therewith.

Palms Junior High School is one of the schools operated by the district, and is located in the Palms community of the city of Los Angeles. The school site is rectangular in shape, being bounded on its northern property line by Woodbine Street, and on its southern property line by the Charnock Elementary School, there being no street on the southern boundary of the site in question. The site is bounded on the east by Midvale Avenue and on the west by Kelton Avenue; midway on the eastern and western boundary lines of the site, Ocean Park Avenue dead-ends at the school property. The intended dedication and improvement of this right of way by the school board therefore is for the purpose of connecting the two portions of the already existing Ocean Park Avenue. This connecting street, to be 84 feet in width, would bisect the school grounds into two approximately equal portions. Included in the intended plans is an underpass which is to connect the bisected portions of the grounds.

The district acquired this property in 1941, and in 1946 a bond issue was approved and construction of a junior high school on this site was proposed. Also, in 1946, Los Angeles City adopted a comprehensive zoning ordinance with provisions that before any land located in the city of Los Angeles could be used for school purposes, a "conditional use" permit must be obtained from the Los Angeles City Planning

Commission. On June 26, 1947, the board filed its application for a "conditional use" permit to use the property for a junior high school. On July 24, 1947, the commission granted the permit subject to the conditions that all the requirements of the comprehensive zoning ordinance be observed in the development of the site for public school purposes, and that the board file and record a tract map of said property "in order to clear the public records" and make provision for extension, widening and improvement of the boundary streets in a manner satisfactory to the city engineer, said map to be filed and recorded within a period of one year from the date of the conditional approval. In October of 1948, the board filed a tentative tract map with the commission which showed the property which the board now intends to dedicate as a separate lot on the tract and not as a street. On October 14, 1948, the commission recommended approval of the map to the city council on the condition that two boundary streets be widened, and that Ocean Park Avenue be opened through the tract in the presently proposed fashion to an 84 foot width and that the board improve the street and construct a pedestrian tunnel under it. On November 23, 1948, the council approved the recommendation of the commission and notified the board and the commission. On January 17, 1949, the board agreed to the conditions and on January 19th sent a letter of agreement to the council agreeing to dedicate and improve the 84 foot strip of land through the school site, "if, as and when required by the city council."

Subsequently due notice was given and a hearing held regarding the dedication and improvement of the *boundary* streets, and the same were dedicated and later improved.

The proceedings leading up to this petition for an injunction began on May 18, 1953, when the council requested the respondent district to immediately dedicate and improve the 84-foot right of way and construct a pedestrian tunnel underneath it. On June 11th, the board advised the council that there were insufficient funds then available to make the said improvements and asked clarification of the request of May 18th. July 3, 1953, the council requested the district to begin said dedication and improvement, and stated that 180 days from May 18th would be a reasonable time for completion. The board, acting pursuant to sections 18671 and 18672[1]

[1] "The governing board of any school district may, pursuant to this article, dedicate or convey to the State, or any political subdivision or municipal corporation thereof, for public street or highway purposes,

of the Education Code, then adopted a resolution declaring its intent to dedicate the right of way in question, and fixed August 13, 1953 as the date when a public hearing would be held. The filing of the original complaint on August 7, 1953, seeking a temporary injunction restraining this intended action was precipitated by board approval on August 3, 1953, of $3,250 for engineering plans for the improvement, and $320 to the Los Angeles city engineer for checking the plans.

In the complaint the appellants alleged with considerable elaboration that the intended action of the board would interfere with teaching, impose a traffic hazard, introduce a flood danger, impose difficult administrative problems, deprive the school of badly needed space, introduce new problems of morals, materially depreciate taxpayers' property and consume school funds needed for school purposes.

The demurrer of the defendants was sustained without leave to amend and the appellants in this proceeding appeal from a judgment of dismissal. In substance, the contentions of the appellants are the following: (1) Sections 18671 and 18004[2] and related sections of the Education Code do not authorize the dedication or improvement of property in a

either with or without consideration and without a vote of the electors of the district first being taken, any real property belonging to the district, either in fee or any lesser estate or interest therein, including abutter's right of access to any public street or highway; and may dedicate to any public corporation without a vote of the electors of the district first being taken and with or without consideration, an easement to lay, construct, maintain, and operate water, sewer, or storm drain pipes or ditches over and upon any land belonging to the school district.''

''Before ordering the dedication or conveyance of any property the governing board shall in regular open meeting by a two-thirds vote of all its members adopt a resolution declaring its intention to dedicate or convey the property. The resolution shall describe the property proposed to be dedicated or conveyed in such manner as to identify it, and shall specify the purposes for which and the terms upon which it will be dedicated or conveyed, and shall fix a time not less than 10 days thereafter for a public meeting of the governing board to be held at its regular place of meeting for a public hearing upon the question of making the dedication or conveyance.''

[2] ''The governing board of any school district may grade, pave, construct sewers, or otherwise improve streets and other public places in front of real property owned or controlled by it, and also may construct in immediate proximity to any school of the district, pedestrian tunnels, sewers and water pipes when required for school purposes, and may appropriate money to pay the cost and expense of the improvements, whether made by the board under contract executed by the board, or under contracts made in pursuance of any of the general laws of the State respecting street improvements, or under other contracts made in pursuance of the charter of any county or municipality.''

manner that would be detrimental to its use for school purposes; (2) The threatened dedication would constitute an abuse of discretion on the part of the board; (3) It would constitute a gift of the money and property of the district in violation of article IV, section 31, and article IX, section 1, of the state Constitution; (4) It was an abuse of discretion for the court to refuse the plaintiffs a right to file an amended and supplemental complaint.

The essence of plaintiffs' argument on the first and second points is that if the facts alleged in the complaint be taken as true, it follows that the proposed dedication and improvement of the right of way were not in furtherance of school purposes, and therefore such action would be in excess of the powers of the board. ■ The answer to these contentions is found in the familiar rule that courts will not interfere with the actions of administrative boards in the absence of fraud, collusion, bad faith or manifest abuse of discretion. The most that was charged was error of judgment and the court has no power to substitute its judgment for that of the administrative board. The board has broad discretion in determination of the public interest and benefit to the district from its action and as the court said in *Butler* v. *Compton Junior College Dist.*, 77 Cal.App.2d 719, at page 727 [176 P.2d 417], quoting the case of *Berkeley High School Dist.* v. *Coit*, 7 Cal.2d 132 [59 P.2d 992]: " . . . the courts 'cannot enter the board room . . . nor interfere at all with its action unless the board is exceeding its legislative powers, or its judgment or discretion is being fraudulently or corruptly exercised.' (*Nickerson* v. *San Bernardino County*, 179 Cal. 518 [177 P. 465].)'' (See also *Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303, 315 [144 P.2d 4]; *Cramer* v. *County of Los Angeles*, 96 Cal.App.2d 255, 256-257 [215 P.2d 497].)

■ It must be presumed that all the matters alleged in the complaint which it is claimed would operate to the detriment of the district were considered by the board before it took its action and that the dedication and improvement, although entailing some disadvantages, would be consistent with a proper use of the property for school purposes.

■ ■ The third contention of the appellants that this is a gift of public money or thing of value within the prohibition of article IV, section 31, of the Constitution, is not well taken. The section states: ''The Legislature shall have no power

. . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . .'' The public purpose doctrine is a well-settled test which has been used in determining whether an appropriation comes within the restriction. The section applies only to the use of public property for private purposes. If the public property is to be used for public purposes it does not fall within the section, provided the appropriation will be beneficial to the entity which is making the appropriation or authorizing its use. These tests are well stated in the case of *City of Oakland* v. *Garrison,* 194 Cal. 298 [228 P. 443], where it was held that an expenditure of county funds for improving an Oakland city street was for a public purpose and would be beneficial to the county itself. (See also *Sacramento etc. Drainage Dist.* v. *Riley,* 199 Cal. 668 [251 P. 207]; *County of San Diego* v. *Hammond,* 6 Cal.2d 709 [59 P.2d 478, 105 A.L.R. 1155].) The courts have held that the constitutional prohibition is inapplicable to action which may benefit the public directly or incidentally. (*Allied Architects' Assn.* v. *Payne,* 192 Cal. 431 [221 P. 209, 30 A.L.R. 1029] (erection of memorial hall for war veterans); *Patrick* v. *Riley,* 209 Cal. 350 [287 P. 455] (compensation for destruction of tubercular cattle); *Housing Authority* v. *Dockweiler,* 14 Cal.2d 437 [94 P.2d 794] (slum clearance).)

It was necessary for the board to obtain the consent of the city to the improvement of the site and its use for school purposes. Certainly it was of benefit to the district that the city give its consent. The district acquired the right to use the site by complying with the demands of the city rather than dispose of the property and locate its school elsewhere. There may have been attendant disadvantages, as alleged by plaintiffs, but it was for the board and not for the court to say whether these were outweighed by the advantages. The tests of public purpose and benefit to the appropriating entity were satisfied. The constitutional prohibitions were not violated.

The fourth and last contention of the appellants that they should have been granted leave to amend and file a supplemental complaint is not well taken. The demurrer to the original complaint was argued August 19 and was sustained without leave to amend and a judgment of dismissal was entered August 26, 1953. On September 11, the plaintiffs gave notice of a motion to vacate the judgment and permit

filing of an amended and supplemental complaint. By the supplemental complaint the plaintiffs made an attack upon the proceedings of the board had and taken subsequent to the institution of the action, namely, at the meeting of August 13. It was alleged that August 13, 1953, was fixed as the time for a public meeting and that the plaintiffs were not allowed a sufficient time to prepare and present to the board their opposition to the board's proposed action, namely, a protest signed by at least 10 per cent of the qualified electors of the district pursuant to section 18675 of the Education Code which protest would have halted the proceedings unless and until the proposed dedication received the approval of the superintendent of schools.

The motion to vacate the judgment was properly denied. The court may not vacate its judgment except under (1) motion for a new trial, (2) on motion where the conclusions of law are inconsistent with the findings, or the judgment is inconsistent with the special verdict, (3) a motion under the provisions of section 473 of the Code of Civil Procedure, where application is made to set it aside within six months, (4) by motion therefor at any time where the judgment is void on its face, or (5) by an independent suit in equity, where the judgment is regular on its face but extrinsically void for want of jurisdiction or by reason of fraud or mistake. (*Levy* v. *Brill,* 107 Cal.App.2d 204 [236 P.2d 603]; *Fisch & Co., Ltd.* v. *Superior Court,* 6 Cal.App.2d 21, 23 [43 P.2d 855]; *Biggs* v. *Biggs,* 103 Cal. App.2d 741, 742 [230 P.2d 32]; *Barlow* v. *City Council of Inglewood,* 32 Cal.2d 688 [197 P.2d 721].)

The proposed amended and supplemental complaint failed to state a cause of action. Section 18672 of the Education Code prescribes that before a dedication of school property be made, a resolution of intention shall be adopted by two-thirds of the members of the board describing the property to be dedicated and fixing a time not less than 10 days thereafter for a hearing. Section 18673 provides that notice shall be given not less than 10 days before the meeting by posting and not less than 5 days by publication. The resolution of the board was adopted July 30, 1953, and two weeks were allowed for the preparation and presentation of a protest. It was alleged that the signatures of 33,000 qualified voters were the minimum number required for an effective protest and that the same could not be obtained in the allowed time.

Although the statute allows a public hearing after the adoption of the resolution, the "public hearing" would not be a judicial hearing but merely a mode for ascertaining the public interest. (*Brown* v. *Board of Supervisors,* 124 Cal. 274, 279 [57 P. 82]; *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 315, *supra.*) The board allowed more than the statutory time for the presentation of protest, and the fact that it would have been difficult to procure signatures of 10 per cent of the electors within two weeks' time would not be a ground for invalidating its action. The proceeding was not one to deprive the plaintiff taxpayers or other property owners of their property or rights. Appellants have incorrectly referred to the property as "taxpayers' property," but admit that the school district holds the property in fee as a trustee for the beneficial owner, the state.

The Legislature has plenary power as to school districts, and the school board in authorizing dedication pursuant to Education Code, sections 18671 to 18675, performs an administrative function as provided by the Legislature. (*Butler* v. *Compton Junior College Dist.,* 77 Cal.App.2d 719, *supra; Stone v. City of Los Angeles,* 114 Cal.App. 192, 204-205 [299 P. 838].) It is public property that is dedicated and the taxpayers have no right to be heard in the matter except as the right is given by the statute. Therefore, being an administrative function, the exercise of which would not affect the plaintiffs' rights, the action of the board did not come within the constitutional protection of the due process clause as to notice and hearing. As there is no right to notice and a hearing except under the statutory provision, the same is a privilege extended by the Legislature, and appellants cannot be heard to complain they have been deprived of constitutional rights in violation of substantive or procedural due process. (*Dominguiz Land Corp.* v. *Daugherty,* 196 Cal. 468, 482 [238 P. 697, 44 A.L.R. 1].)

It was alleged in the proposed supplemental complaint that at the hearing on August 13, evidence was introduced by the opponents of the proposed dedication which tended to prove the dedication would impair school operations and prejudice the welfare and the best interests of the school children. Plaintiffs see only the imperfections in the plan. Plaintiffs argue that in view of this evidence it was an abuse of discretion for the board to proceed further in the matter. They overlook the fact that if the board had not acquiesced in the conditions imposed by the city there would be no

school on the property. That, alone, was sufficient to prove that the dedication would be of real benefit to the district, despite its disadvantages.

At the time the demurrer was heard, the board had already held its meeting of August 13. Plaintiffs could then have amended to challenge the proceedings which they sought to attack by their amended and supplemental complaint. ▉ The demurrer should not have been sustained without leave to amend unless it appeared that the complaint could not be amended to state a cause of action. (*Wight* v. *Hubbard,* 111 Cal.App.2d 606 [245 P.2d 64].) Had plaintiffs amended or sought leave to amend in accordance with the amendment which they proposed later, their complaint would still have failed to state a cause of action. Therefore, it was not error to refuse leave to amend.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 10, 1955.