[Civ. No. 21586. Second Dist., Div. Three. Jan. 28, 1957.]

FRANK W. BABCOCK, Appellant, v. COMMUNITY RE-
DEVELOPMENT AGENCY OF THE CITY OF LOS
ANGELES et al., Respondents.

Austin Clapp and Charles E. McClung for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant
City Attorney, Spencer L. Halverson, Deputy City Attorney,
and Charles F. Reiche for Respondents.

WOOD (Parker), J.—Action for injunction and declaratory relief. Plaintiff sought an injunction restraining defendants from entering into any contract with the United States government or any agency thereof, or from otherwise expending public funds, for the redevelopment of the Bunker Hill area of the city of Los Angeles. In another cause of action, plaintiff sought a declaration that the jurisdictional prerequisites for the redevelopment of said area do not exist.

Defendants are Community Redevelopment Agency of the City of Los Angeles (referred to as the agency), the city of Los Angeles (referred to as the city), and the individual members of the Los Angeles City Council.

The agency and the city demurred to the amended complaint generally and specifically. The demurrers were sustained, and plaintiff was granted permission to amend within 10 days. Plaintiff declined to amend and the court dismissed the action as to the agency and the city. Plaintiff appeals from the orders and judgments dismissing the action.

The allegations of the cause of action for an injunction were in substance, as follows: Plaintiff is a citizen of California, a resident of the city of Los Angeles, the owner of real property in said city, and is subject to taxation and, within one year prior to the commencement of the action, has paid taxes to the city. The agency is a public corporation existing pursuant to the Community Redevelopment Law of California. The city is a charter city. The individual defendants are and at all times mentioned in the complaint were members of the council of the city and had and have powers and duties under the Community Redevelopment Law of California and the actions of said defendants thereinafter more particularly set forth, with the exception of the actions thereinafter alleged regarding the appropriation of funds on June 28, 1954 by the city council, are the actions of an agency of California pursuant to the provisions of said Community Redevelopment Law. Plaintiff is the owner of real property in the city, which property is particularly described in the complaint and referred to thereinafter as the Dome Apartment-Hotel. Said hotel building is of wood and stucco construction on concrete and brick foundations, and consists of four stories and a basement, and contains, among other things: 29 apartments with kitchen and bath; 33 one-room apartments with kitchen; nine bachelor rooms without bath; lobby; closets; public toilets; stairways; an automatic elevator; and five fire

escapes. Said building has been inspected from time to time by the Building and Safety Department and Health Department of the city "and the conditions and facilities therein found by said Departments to meet with the requirements of the applicable ordinances" of the city governing the maintenance and operation of the building as an apartment-hotel. Said Dome Apartment-Hotel is fit and safe to occupy for the living purposes for which it was designed and for which it is presently used. Said premises are not conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime. Said real property and building are within the area in the city referred to as Bunker Hill. Bunker Hill is an area bounded on the north by First Street, on the south in part by an irregular line running between Fourth and Fifth Streets, on the east by Hill Street, and on the west by Fremont Street. The area is more particularly shown on Exhibit A attached to the complaint.

It was alleged further that Bunker Hill was developed in the early days of the city. There are many buildings and structures in said area used and intended to be used for living, commercial, industrial and other purposes, and for a combination of said purposes. A predominant number of said buildings are fit and safe to occupy for such purposes and are not conducive to ill health, transmission of disease, juvenile delinquency, infant mortality or crime. There is no disuse of land or buildings in the area. There is some vacant land, but plaintiff alleges on information and belief that where said vacant land exists each owner thereof has definite plans for its use and development within a reasonable period of time from the filing of the complaint. Some of the land is owned by public agencies, and plaintiff alleges on information and belief that said public agencies have definite plans for the use and occupancy of said land within a reasonable time from the filing of the complaint. Plaintiff alleges on information and belief that defendant city intends to acquire for public use by the exercise of eminent domain certain property in the Bunker Hill area, to wit, an area bounded by First, Hill, Second, and Olive Streets. Bunker Hill area was developed primarily for residential use and is presently so used, although over the years there has been a change from single-family to multi-family use with a corresponding increase in commercial uses to meet the needs of an expanding population. For a long time prior to the enactment of ordinance Number 90500 (March, 1946), and since such enactment, the area has

been zoned for multi-family use. There is no economic dislocation in the area, in that, the primary use contemplated for the area, by the present owners of property therein and by defendants, is residential with necessary commercial accessories, and the area has developed substantially in accordance with the plans of the appropriate city authorities. The lots within the area are predominately regular in size and shape and are predominately greater in size than 5,000 square feet, and such lots are of adequate size for proper usefulness and development. The lots are laid out with due regard for the contours and other physical characteristics of the ground and surrounding conditions. The streets are adequate and are keyed to the surrounding freeway development, "use of which might be substantially impaired by their relocation." Utilities are in and are adequate and "expense" of large sums would be necessitated in case of relocation of said utilities. Property in the area owned by the city is available for parks and other open spaces. The present use of the land in the area is neither stagnant nor unproductive, but fills existing economic needs in the community. There have been a substantial number of transfers of property in the area within five years prior to the filing of the complaint. The values of real property in the city have at least doubled between 1940 and 1955, and the prices at which properties in the area have been transferred since January 1, 1950, have been at least twice the value of the properties in 1940. Due to the construction of the freeway network, which surrounds and cuts through the area, the value of property is increasing and within a reasonable time will be of such value as to make it economically and financially practicable for the present owners to develop and redevelop their properties. Plaintiff alleges on information and belief that said owners will develop and redevelop their properties within a reasonable time. Public intervention and assistance ·is not necessary for the development and redevelopment. There is practically no tax delinquency in the area, and the amount presently paid in taxes per capita is approximately equal to the amount paid by the city to cover the cost per capita of rendering public service. The population of the area has remained substantially the same for the last 25 years except as affected by the purchase of land by public bodies for public improvements.

It was alleged further that existence of the buildings in the area and their present use "is not a menace, injurious or inimical" to the public health, safety or welfare of the

people of the city, and any difficulties which might exist in the area could have been remedied "by the exercise of existing statutes and ordinances, including but not limited to" Ordinances Numbers 77000, 90500, 100676, 100677, 100678, 100757 of the city. Those ordinances authorize the Building and Safety Department and the Health Department of the city to require the repair or demolition of buildings which are unfit or unsafe to occupy for living, commercial, industrial or other purposes and authorize said departments to require the repair or reconstruction of buildings which are deteriorated or substandard, as defined in said ordinances, so as to make them comply with the standards set forth in said ordinances for the protection of life, health, property, safety and welfare of the public and of the occupants of said buildings. Said ordinances authorize said departments to order the repair, reconstruction or demolition of buildings which are in such condition as to be conducive to ill health, transmission of disease, or infant mortality, or which are overcrowded or in which there exists inadequate provisions for ventilation, light or sanitation. There is no greater degree of juvenile delinquency and crime in the area than in other comparable areas of the city. The development and redevelopment of the area can be accomplished by private enterprise without public participation or assistance and therefore it is not in the public interest nor are the defendants authorized by law to exercise the power of eminent domain to acquire any of the lands in the area for such purpose.

It was alleged further that defendants, other than the city, have declared the area to be a blighted area, subject to redevelopment and to the terms of the Community Redevelopment Law, and the defendants, other than the city, propose and intend to acquire all the real property in said area, "except such as may be acquired by the City of Los Angeles as hereinabove alleged, including that owned by plaintiff more particularly described hereinabove." Said defendants intend to make this acquisition, if necessary, by exercise of eminent domain, and intend and propose to completely remove all existing edifices and to clear the land in order to replace the existing conditions with a completely planned community. In this regard on November 2, 1954, the agency adopted Resolution Number 48, by the terms of which the agency authorized an application to the federal government for financial assistance, pursuant to the provisions of the Federal Housing Act of 1954 as amended (42 U.S.C., § 1450 et seq).

Said resolution was approved by a majority of the City Council of the city on November 15, 1954. Plaintiff alleges on information and belief that pursuant to said resolution the agency submitted an application to the House and Home Finance Agency of the federal government, requesting a preliminary loan of approximately $600,000, pursuant to section 1452, subdivision D, title 42 of the United States Code. Plaintiff alleges on information and belief that these funds, if granted, are to be used by the agency to prepare preliminary plans and surveys ''looking'' to the ultimate completion of the agency's ''aforesaid declared purpose of acquiring said real property in the Bunker Hill area for redevelopment.'' The agency refused plaintiff's request that plaintiff be allowed to inspect said application. Plaintiff alleges on information and belief that if the application referred to above is approved by the House and Home Finance Agency, the defendant agency will execute a contract with the federal government for the funds sought in said application. Under the provisions of section 1452, subdivision D, title 42 of the United States Code, said funds will have to be repaid with interest. For the foregoing reasons, the area is not a redevelopment area or a blighted area within the meaning of the provisions of the Community Redevelopment Law, and defendant agency lacks the power to proceed with its express intention of acquiring the real property in the area by eminent domain for purposes of redevelopment.

It was alleged further that about June 28, 1954, the individual defendants, acting as the city council of the city, appropriated $107,000 to and for the benefit of the agency, for use by the agency for its administrative and overhead expenses for the fiscal year 1954-1955. Said money was appropriated from money of the city, said money having been derived from taxes collected by the city. Between July 1, 1954, and the date of filing the complaint, a substantial part of the $107,000 has been spent, and between the date of filing the complaint and July 1, 1955, an additional substantial amount thereof will be spent by the agency and by the city to promote the agency's plan to redevelop the area. By reason of the foregoing, any expenditures or the incurring of financial obligations by defendants with respect to the area will be a waste of public funds. Defendant city has aided, and cooperated with, the other defendants in doing the acts alleged to have been done by them, and the city threatens to, and will, unless restrained by the court, continue to aid and cooperate

with the other defendants in doing the acts which it is alleged the other defendants threaten to do.

In the cause of action for declaratory relief plaintiff incorporated by reference all the allegations of his cause of action for an injunction, except: (1) the allegations that plaintiff is a citizen of California, a resident of Los Angeles, the owner of real property in the city, and is subject to taxation by the city, and within one year prior to commencement of the action paid taxes to the city; (2) the allegations regarding the appropriation of $107,000 to and for the benefit of the agency, and the expenditure and proposed expenditure of substantial parts of said amount.

Further allegations in the cause of action for declaratory relief were in substance, as follows: Plaintiff is the owner of real property in the Bunker Hill area of the city. There are approximately 400 separate parcels of real property within the area which are owned by approximately 300 different owners. The issues and the questions to be determined in the action are of common and general interest to all property owners in the area similarly situated, and the issues and questions affect all such owners in the same manner as plaintiff is affected. Such owners are so numerous that it is impracticable to bring all of them before the court, and therefore plaintiff sues for himself and on behalf of all the owners similarly affected. By reason of the acts and conduct of defendants, other than the city, thereinabove set forth, "the quality of plaintiff's land and building has been disparaged and its marketability has been and will be further impaired." Defendants, other than the city, threaten and intend to continue such conduct, "including statements" that said defendants intend to dispossess plaintiff's tenants. Plaintiff alleges on information and belief that the present tenants will seek residence elsewhere and plaintiff will be unable to rent accommodations in his building. Plaintiff has no adequate remedy at law. By reason of the foregoing, an actual controversy exists between plaintiff and defendants with regard to the legal status of the Bunker Hill area and more particularly the real property therein owned by plaintiff. Defendants contend: (1) that under the Community Redevelopment Law of California, the agency has the right and power to acquire the plaintiff's said property by eminent domain, pursuant to sections 33048 and 33267 of the Health and Safety Code; (2) that the area is a blighted area within the meaning of sections 33040 through 33044 of the Health and Safety Code; and (3) that the area is a redevelopment area within the meaning of

sections 33003 and 33004 of the Health and Safety Code. Plaintiff denies these contentions. Plaintiff contends that defendants have no power to incur any financial obligations or to expend any funds toward the redevelopment of the area. Defendants deny this contention.

The prayer of the complaint is that the respective rights of plaintiff and defendants with relation to plaintiff's property and the Bunker Hill area be adjudicated; and that an injunction be issued restraining defendants from entering into any contract with the United States Government or any agency thereof or otherwise expending public funds for the purpose of redeveloping the area.

As a summary of the first cause of action, it may be stated generally that it alleges: The qualifications of plaintiff to bring the action. The legal capacities of the defendants. A detailed description of plaintiff's property, which was to the effect that the property was not substandard. A general description of the Bunker Hill area, including general statements to the effect that a predominate number of the buildings are fit to occupy and are not substandard, and that the area is not a blighted area but fills existing economic needs. The owners of property in the area have plans for its redevelopment, and public assistance is not necessary for the redevelopment. A general statement to the effect that any substandard conditions in the area could be remedied under provisions of existing ordinances of the city. The defendants, other than the city, have declared the area to be a blighted area, subject to redevelopment under the Community Redevelopment Law, and they propose and intend to acquire all the real property in the area, except such as may be acquired by the city. Said defendants intend to make the acquisition, "if any," by eminent domain, and they intend to remove all edifices in order to replace "the existing conditions" with a planned community. The agency, pursuant to a resolution adopted by it, submitted an application to the federal government for a loan of approximately $600,000. Said resolution was approved by the city council. Said funds, if granted, are to be used by the agency to prepare preliminary plans and surveys for the furtherance of redevelopment of the area. The area is not a redevelopment or blighted area and the agency lacks the power "to proceed" to acquire the real property in the area by eminent domain for redevelopment. The city council appropriated $107,000 to the agency for the agency's expenses, and a substantial part of the money has been spent.

Any expenditures by defendants with respect to the area will be a waste of public funds.

As a summary of the second cause of action, it may be stated generally that it alleges: An actual controversy exists between plaintiff and defendants as to the legal status of the area. Defendants contend that the agency has the power to acquire plaintiff's property by eminent domain, that the area is a blighted and redevelopment area. Plaintiff denies these contentions. Plaintiff contends that defendants have no power to expend any funds toward the redevelopment. Defendants deny this contention.

Section 33040 of the Health and Safety Code states: "It is found and declared that there exist in many communities blighted areas which constitute either social or economic liabilities, or both, requiring redevelopment in the interest of the health, safety, and general welfare of the people of such communities and of the State. These blighted areas are characterized by one or more of the conditions set forth in Sections 33041 to 33044, inclusive."

Section 33041 of the Health and Safety Code provides: "A blighted area is characterized by the existence of buildings and structures, used or intended to be used for living, commercial, industrial, or other purposes, or any combination of such uses, which are unfit or unsafe to occupy for such purposes and are conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, and crime because of any one or a combination of the following factors: (a) Defective design and character of physical construction. (b) Faulty interior arrangement and exterior spacing. (c) High density of population and overcrowding. (d) Inadequate provision for ventilation, light, sanitation, open spaces, and recreation facilities. (e) Age, obsolescence, deterioration, dilapidation, mixed character, or shifting of uses."

The characteristics of blighted areas, as set forth in section 33042, pertain to conditions resulting from faulty planning and subdividing (such as irregular form of lots and inadequate streets and utilities). The characteristics set forth in section 33043 pertain to conditions resulting in reduction of taxes to the extent that taxes are inadequate for cost of public services. The characteristics set forth in section 33044 pertain to conditions resulting from lack of use of land and from loss of population.

Section 33047, subdivision (c), of the Health and Safety Code declares that redevelopment of blighted areas is a public purpose for which public money may be expended and private

property acquired, and is a governmental function of state concern in the interest of health, safety, and welfare of the people.

Section 33003 of the Health and Safety Code provides: " 'Redevelopment area' means an area of a community which is a blighted area, the redevelopment of which is necessary to effectuate the public purposes declared in this part."

Section 33480 of the Health and Safety Code provides: "Redevelopment areas may be designated by resolution of the legislative body, or the legislative body may by resolution authorize the designation of redevelopment areas by resolution of the planning commission or by resolution of the members of the agency."

Section 33481 of the Health and Safety Code provides: "The resolution designating a redevelopment area or areas shall contain the following: (a) A finding that the area designated is a blighted area, the redevelopment of which is necessary to effectuate the public purposes declared in this act; (b) A finding that the area requires study to determine if a redevelopment project or projects, within said area are feasible; (c) A description of the boundaries of the area designated."

Section 33004 of the Health and Safety Code provides: "A redevelopment area need not be restricted to buildings, improvements, or lands which are detrimental or inimical to the public health, safety, or welfare, but may consist of an area in which such conditions predominate and injuriously affect the entire area. A redevelopment area may include lands, buildings, or improvements which are not detrimental to the public health, safety or welfare, but whose inclusion is found necessary for the effective redevelopment of the area of which they are a part."

Appellant argues that the demurrers admit the allegations to the effect that characteristics of blighted areas, as set forth in said sections 33041 to 33044, inclusive, do not exist in the Bunker Hill area; and that the demurrers admit the allegations to the effect that the redevelopment of the area is not necessary under the provisions of the community redevelopment laws. The allegations regarding the nonexistence of the characteristics of blighted areas were allegations negativing the various conditions specified in said sections as characteristics of blighted areas. Some of such allegations were that a predominate number of the buildings are fit and safe to occupy for living, commercial, and other purposes, and those buildings are not conducive to ill health, transmission of disease, juvenile de-

linquency, infant mortality or crime; and the existence of the buildings in the area is not a menace to public health, safety or welfare of the people. ■ Many of such allegations are conclusions and, of course, are not admitted by demurring. ■ The allegation that the defendants lack power to acquire the property in the area, by eminent domain, for redevelopment purposes is a conclusion.

As above shown plaintiff gave a detailed description of his own property, but he gave only a general description of the other property in the area. Even if the condition of his own property is not characteristic of the condition of property in a blighted area, that fact is not determinative that the area as a unit is not a blighted area. (Health & Saf. Code, § 33004,—stating that the area may include property not detrimental to public health, etc; *Stockus* v. *Boston Housing Authority*, 304 Mass. 507 [24 N.E.2d 333].) In the Stockus case, just cited, it was said at page 510 (304 Mass.): "The fact that the dwellings of the plaintiffs have such facilities [adequate facilities] is immaterial, for the test is the area as a unit and not two dwellings located in the area." In *Berman* v. *Parker*, 348 U.S. 26 [75 S.Ct. 98, 99 L.Ed. 27], which pertained to the District of Columbia Redevelopment Act, it was said at page 35: "Property may of course be taken for this redevelopment which, standing by itself, is innocuous and unoffending. But we have said enough to indicate that it is the need of the area as a whole which Congress and its agencies are evaluating."

The amended complaint alleged that the defendants, other than the city, had declared the area to be a blighted area, subject to redevelopment under the Community Redevelopment Law, and that the agency intends to acquire by eminent domain all the property in the area, except such as may be acquired by the city. The defendants, other than the city, were the agency and the members of the city council. It was alleged that the actions of such members were the actions of an agency of the state pursuant to the Community Redevelopment Law. It therefore appears from the complaint that the agency and the members of the city council have declared or designated the area to be a blighted area. As above shown, section 33480 of the Health and Safety Code provides that redevelopment areas may be designated by the legislative body (city council), or that body may authorize the designation of such areas by the agency (Redevelopment Agency). Also as above shown, section 33481 of said code

provides that the resolution designating a redevelopment area shall contain a finding that the area "is a blighted area, the redevelopment of which is necessary to effectuate the public purposes declared in this act." It has been held that the Community Redevelopment Law does not violate constitutional provisions relating to equal protection of the law, due process of law, delegating legislative power, and granting special priviledges. (*Redevelopment Agency* v. *Hayes,* 122 Cal.App.2d 777, 805-808 [266 P.2d 105].) The agency and the legislative body (city council) have authority to designate redevelopment areas, and a court is not empowered to substitute its determination for the determination of the agency or the legislative body in the absence of abuse of discretion, fraud, collusion, or bad faith on the part of the agency or the legislative body. (See *Ransom* v. *Los Angeles City High School Dist.,* 129 Cal.App.2d 500, 505 [277 P.2d 455].) In the case just cited it was stated (p. 505), in quoting from another case: ". . . the courts 'cannot enter the board room . . . nor interfere at all with its action unless the board [administrative agency] is exceeding its legislative powers, or its judgment or discretion is being fraudulently or corruptly exercised.' [Citation.]" In the present case, there is no allegation of fraud, collusion, bad faith, or abuse of discretion. In *Nickerson* v. *San Bernardino,* 179 Cal. 518 [177 P. 465], it was said at page 522: "When the legislature has committed to a municipal body the power to legislate on given subjects or has committed to it judgment or discretion as to matters upon which it is authorized to act, courts of equity have no power to interfere with such a body in the exercise of its legislative or discretionary functions."

In *Kaskel* v. *Impellitteri,* 306 N.Y. 73 [115 N.E.2d 659], the city planning commission and the board of estimate determined that a certain area was substandard and insanitary and was subject to slum clearance. Plaintiff sought a determination that the area was not substandard and insanitary. The lower court dismissed the complaint. The New York Court of Appeals, in affirming the judgment, said at page 80: "[T]he situation here actually displayed is one of those as to which the Legislature has authorized the city officials, including elected officials, to make a determination, and so the making thereof is simply an act of government, that is, an exercise of governmental power, legislative in fundamental character, which, whether wise or unwise, cannot be overhauled by the courts."

In *Schenck* v. *Pittsburgh*, 364 Pa. 31 [70 A.2d 612], the city planning commission certified that an area was a blighted area within the meaning of the Pennsylvania Redevelopment Law and approved a proposal by the Urban Redevelopment Authority of Pittsburgh for redevelopment of the area. The proposal, with a contract with a redeveloper for redevelopment of the area, was submitted to the city council for approval. Plaintiff, who was part owner of property within the area, sought to enjoin the city council from approving the proposal and the contract, to enjoin the city from appropriating any money to carry out the proposal, to enjoin the authority from executing the contract and taking any steps to acquire land in the area by eminent domain. The Supreme Court of Pennsylvania, in the exercise of original jurisdiction, dismissed the bill. The court said at pages 35 and 36: "Plaintiff asserts that the mere fact that the City Planning Commission has certified the tract as a blighted area does not conclusively establish that the redevelopment of this particular land is in fact for a public purpose. The answer to this contention is that, in the absence of any indication that the Commission did not act in good faith or was wholly arbitrary in certifying the area designated by it as blighted, its certification to that effect is not subject to judicial review. . . . It has been held in many cases that where the right of eminent domain is vested in a municipality, an administrative body, or even a private corporation, the question as to whether the circumstances justify the exercise of the power in a given instance is not a judicial one, at least in the absence of fraud or palpable bad faith."

In *Stockus* v. *Boston Housing Authority*, *supra*, 304 Mass. 507 [24 N.E.2d 333], the defendant had determined that a tract of land which included parcels owned by plaintiffs constituted a substandard area as defined by the Massachusetts housing authority law and adopted an order taking the tract. Plaintiffs sought to enjoin the defendant from enforcing its order taking plaintiffs' property. The appeal was from a decree sustaining a demurrer. The Supreme Court of Massachusetts, in affirming the decree, said at pages 509 and 510: "The allegations concerning the characteristics of the area as enumerated in the bill seek to avoid the classification of the locus as a sub-standard area by negativing verbatim the various elements included in section 26J in defining a substandard area. While it is true that the specific characteristics enumerated in the bill, some being alleged to be absent

and others to be present in the area in question, are in the main physical objects whose presence or absence is a matter of fact, yet it is equally true that the extent that these various elements enter into and form the predominating and distinctive traits of a neighborhood is frequently and largely a matter of opinion and whether such characteristics or some of them, considered all together or in any combination, present a housing situation that in its final analysis may reasonably and fairly be said to be injurious to the public safety, health or morals, is to a great degree a matter of practical judgment, commonsense and sound discretion. There are, undoubtedly, instances where men of training and experience in special subjects related to construction, sanitation, fire prevention, zoning, public health, social service and other subjects might honestly differ in determining whether a certain district was a slum area. If the question is a debatable one, we have no right to substitute our judgment for that of the defendants acting as the local housing authority, upon whom the Legislature conferred the power 'To determine what areas within its jurisdiction constitute sub-standard areas.' [Citations.] The specific negation of the presence of each of the elements included within the statutory definition of a sub-standard area, section 26J, adds nothing to the bill. [Citations.]''

The court did not err in sustaining the demurrers. The amended complaint does not state a cause of action for an injunction. The court was not required to make a declaration regarding the alleged controversy. ''Declaratory relief . . . may be refused in the discretion of the trial court if it appears that the determination is not necessary or proper at the time and under all the circumstances. (Code Civ. Proc., § 1061.) Where facts appear from the face of the complaint which would justify a trial court in concluding that its determination is not necessary or proper, it has been held that the court may sustain a general demurrer to the complaint for declaratory relief. [Citations.]'' (*Moss* v. *Moss,* 20 Cal. 2d 640, 642 [128 P.2d 526, 141 A.L.R. 1422].)

The orders and judgments, dismissing the action, are affirmed.

Shinn, P. J., concurred.

VALLÉE, J.—I concur in the judgment. I am not in accord with the statement in the opinion that ''a court is not empowered to substitute its determination for the determination

of the agency or the legislative body in the absence of abuse of discretion, fraud, collusion, or bad faith on the part of the agency or the legislative body.'' Section 1094.5 of the Code of Civil Procedure makes it clear that the validity of any final administrative order or decision may be inquired into in a proceeding for a writ of mandate. (See *Redevelopment Agency* v. *Hayes,* 122 Cal.App.2d 777, 812 [226 P.2d 105].) And section 1094.5, subdivison (b), provides that:

''The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.''

The agency says it is a ''State Agency.'' If that be true, in a mandamus proceeding to review its final order the court is authorized to exercise its independent judgment on the evidence. (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20]; *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242, 246 [217 P.2d 630, 18 A.L.R.2d 593]; *Thomas* v. *California Emp. Stab. Com.,* 39 Cal.2d 501, 504 [247 P.2d 561].)

I concur in the judgment solely on the ground stated in the agency's brief, which reads:

''Also, a court should not undertake to adjudicate any of appellant's alleged rights until such rights first have been determined and established in accordance with the procedure set up for that purpose in the Community Redevelopment Law, as hereinbefore referred to.

''Attention is called to Section 33481(b) of the Community Redevelopment Law which requires a finding that the area designated as a blighted area 'requires study to determine if a redevelopment project or projects within said area are feasible.' It is for the purpose of making this study and investigation that this respondent has applied to the Federal Government for a preliminary loan, pursuant to the provisions of the Housing Act of 1949 as amended. Appellant admits this situation by the allegations in his amended complaint in paragraph XV, lines 2 to 20 on page 9.

''In other words, it is the contention of this respondent that appellant's action is premature; that there are no alleged legal rights of appellant or duties of respondent to be de-

termined at this stage of the proceedings under the Community Redevelopment Law, and, therefore, there is no justiciable controversy between appellant and respondent to be adjudicated."

Appellant's petition for a hearing by the Supreme Court was denied March 27, 1957. Schauer, J., was of the opinion that the petition should be granted.