[L. A. No. 21734.   In Bank.   Feb. 7, 1951.]

COUNTY OF LOS ANGELES, Petitioner, v. H. L. BYRAM, as County Treasurer, etc., et al., Respondents; PERCY V. HAMMON, Intervener.

695

Harold W. Kennedy, County Counsel, and A. Curtis Smith, Assistant County Counsel, for Petitioner.

Bodkin, Breslin & Luddy and S. V. O. Prichard for Respondents.

Irving M. Walker for Intervener.

CARTER, J.—The controversy here presented concerns the validity of a contract for the construction of a court building in the county of Los Angeles. The selection of the site therefor was considered by this court in *Simpson* v. *Hite, ante,* p. 125 [222 P.2d 225].

The county owns real property situated in the city of Los Angeles, which has been selected for the erection of a court building. The Retirement Association of the county of Los Angeles which exists by virtue of statute (Gov. Code, § 31552) is governed by a retirement board of five persons (Gov. Code, § 31520) and its members comprise the employees of Los Angeles County. (Gov. Code, § 31552.) The county has incurred liability for architect's and engineer's fees in preparation for the construction of the building. Pursuant to statute on August 27, 1950 (Gov. Code, §§ 31595 et seq.), an instrument designated "Lease Agreement with Options to

Purchase'' was entered into between the retirement board, designated ''lessor'' and Los Angeles County, designated ''lessee.'' It is there provided that the lessor has offered to erect a building on the lessee's property (referred to as ''site'') and ''rent'' it to the lessee; that lessee grants to lessor permission to use its site for the purpose of the lease; that after receiving possession of the site lessor will procure a contract for the construction of this building according to the plans of the lessee within two years, with a possible time extension, at a cost of $6,000,000; that lessor assumes liability for architect's and engineer's fees heretofore incurred or paid; that lessor ''leases'' to lessee and lessee ''rents'' from lessor the building for a 50-year term; that lessee shall pay ''rental'' of $25,000 for the ''use of the premises'' for each month at the end thereof and an amount equivalent to the *ad valorem* taxes, and liens for special assessments and insurance premiums paid by lessor; that ''it is expressly understood and agreed that each month's rental shall become due only in consideration of the right to possess, occupy, and use the Building during the preceding month, and it shall be the responsibility of the Lessor to provide such Building at all times''; that lessor keep building insured against various hazards; the lease may be terminated by either party when it has run the period (estimated at 40 years) prescribed in section 31604 of the Government Code, that is, when the retirement association has received its investment, plus interest; that lessee may not alter the building without lessor's consent; title to the site remains in the lessee, unless lessor exercises its option to purchase, and title to the building remains in lessor unless lessee's option to buy is exercised; maintenance of the building rests with lessee; lessee has the option to purchase the building during the term of the lease for the investment of lessor less 2 per cent per year and if not exercised, lessor has option to buy or lease the site at the fair market value. The statute under which the retirement board and county entered into the lease provides that the funds of the retirement association held by the county treasurer shall be invested in ''Real property or improvements constructed or to be constructed on real property when such real property or such improvements are acquired for sale or lease to the county in which the retirement system is established and subject to the limitations of this article.'' (Gov. Code, § 31595(e) as amended, Stats. 1949, ch. 199.) ''No investment shall be made in real property unless it is approved by unanimous

vote of the board and a four-fifths vote of the members of the board of supervisors of the county in which the retirement system is established.'' (Gov. Code, § 31601, Stats. 1949, ch. 199.) ''Before an investment is made in real property the (retirement) board shall enter into a lease or lease option agreement with the county in which the retirement system is established under which the county agrees to rent the property at a monthly rental and for a period, not to exceed 50 years, sufficient to return not less than the investment together with interest at the rate prescribed in Section 31603. The agreement may contain an option or options to purchase provided such option together with the rentals will return not less than the investment together with interest at a rate $\frac{3}{4}$ per cent higher than the rate fixed by Section 31591 of this code or in the event a different rate has been determined by the board, then $\frac{3}{4}$ per cent higher than the rate so determined at the time the agreement is made. In the event a building is built on county-owned land the agreement may contain an option to purchase the land at any time or at the termination of the lease at its then fair market value.'' (Gov. Code, § 31604, Stats. 1949, ch. 199.) ''In order to make the provisions of this article relating to the investment of retirement funds completely effective, the board is authorized, for investment purposes only, to purchase, sell or lease real property or to enter into options therefor and when necessary for investment purposes to enter into contracts for the construction of buildings and may repair and maintain such property and do any and all things necessary to protect the investment including, but not limited to, purchasing insurance against the loss of the property or the loss of use and occupancy of the property. It may also take any other action necessary to carry out the investment provisions of this article. In the construction of buildings the board shall follow, substantially and insofar as applicable, the procedure and limitations prescribed by law for the construction of buildings by the county in which the retirement system is established.'' (Gov. Code, § 31605, Stats. 1949, ch. 199.)

In accordance with the lease requiring lessor to pay architect's fees incurred by the petitioner county, a demand was made on respondents members of the retirement board to draw a warrant to pay such fees and was refused. A writ of mandate is now sought to compel the issuance of such warrant.

In chief, it is contended that the lease was merely a subterfuge for what is really an installment contract for the pur-

chase by petitioner of the building and as such represents a liability or indebtedness in excess of that authorized by the constitutional provision reading: "No county, . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. . . ." (Cal.Const., Art. XI, § 18.) There has not been an approval by the electorate of the proposed transaction and while the "rental" payable under the lease will not exceed the debt limitation, the total amount thereof will.

There are two reasons why the lease is not invalid under the debt limitation provision.

First, even assuming that the lease is an installment contract, the obligation represented thereby is one the law imposes upon the county and therefore is not a debt or liability within the contemplation of the Constitution.

An obligation imposed by law upon a city or county is not an indebtedness or liability within the meaning of the debt limitation provision. (*McCracken* v. *City of San Francisco,* 16 Cal. 591, obligation to refund purchase price of property of city illegally sold by it; *City of Long Beach* v. *Lisenby,* 180 Cal. 52 [179 P. 198], *Metropolitan Life Ins. Co.* v. *Deasy,* 41 Cal.App. 667 [183 P. 243], and see *McBean* v. *City of Fresno,* 112 Cal. 159, 166 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794], tort liability; *Cashin* v. *Dunn,* 58 Cal. 581, *Welch* v. *Strother,* 74 Cal. 413 [16 P. 22], *Lewis* v. *Widber,* 99 Cal. 412 [33 P. 1128], *Martin* v. *Fisher,* 108 Cal.App. 34 [291 P. 276], *Lotts* v. *Board of Park Commrs.,* 13 Cal.App.2d 625 [57 P.2d 215], and see *Harrison* v. *Horton,* 5 Cal.App. 415 [90 P. 716], liability for salary of city or county officer or employee fixed by Legislature; *Oscar Heyman & Brother* v. *Bath,* 58 Cal.App. 499 [208 P. 981], refund of illegal tax; *American Co.* v. *City of Lakeport,* 220 Cal. 548 [32 P.2d 622], cf. *Wulff-Hansen & Co.* v. *Silvers,* 21 Cal.2d 253 [131 P.2d 373], obligation of a city to purchase and pay into bond redemption fund land sold for delinquent special assessments where there are no other purchasers; *Mills* v. *Houck,* 124 Cal. App. 1 [12 P.2d 101], judgment against city for costs where it dismissed an eminent domain proceeding and such costs were allowed by section 1255a of the Code of Civil Procedure; see *Arthur* v. *City of Petaluma,* 175 Cal. 216 [165 P. 698]; *City of Pasadena* v. *McAllaster,* 204 Cal. 267 [267 P. 873].)

It has been held, however, that a claim on a contract for the burial of indigent dead is within the limitation for the reason that, although the obligation of burial rested on the county, the liability was expressed in a contract made with the undertaker-claimant and was a general, rather than specific, duty (*Pacific Undertakers* v. *Widber,* 113 Cal. 201 [45 P. 273]), and the same as to a claim on a contract to furnish supplies to prisoners in jails (*Goldsmith* v. *San Francisco,* 115 Cal. 36 [46 P. 816], following the Pacific Undertakers case). Those cases were approved in *Arthur* v. *City of Petaluma, supra,* 175 Cal. 216, but there, as the court points out, the obligation to pay the printer for the publication of a charter was voluntarily assumed when proceedings to adopt a charter were voluntarily launched by the city. In other states there is a split of authority. (38 Am.Jur., Municipal Corps., §§ 453-455.)

There is no doubt that the duty of providing adequate quarters for courts is mandatory, explicit and imposed by law on the county. It has no choice in the matter. In *Simpson* v. *Hite, ante,* p. 125 [222 P.2d 225], this court, in considering whether the selection of a site for the court building here involved was subject to referendum, said: "By *state law* boards of supervisors *are required* to provide 'suitable quarters' for superior and municipal courts. Such state law leaves to the boards of supervisors to determine, in each case, what is required to constitute 'suitable quarters.' It is *undisputed that suitable quarters for such courts are wanting and are needed in Los Angeles County,* and that the board of supervisors has so determined. . . .

"The *state Legislature has declared* the legislative policy applicable here: that the board of supervisors shall provide suitable quarters for the municipal and superior courts. . . .

"Prescribing the policy and duty was the *legislative act of the state;* carrying out the policy by performing the duty is an administrative function delegated by the state to the local governing body, the board of supervisors. . . .

"Here the state has acted to establish the basic policy and has vested the responsibility for carrying out that policy in a board of supervisors. . . . However, in none of those cases was the court purporting to deal with a situation such as the one at bar, where the *legislative policy* has been *expressly fixed by the state* itself, and the execution of that policy has been *specifically imposed* by the state law on the board of supervisors as an administrative function. It would be beyond

the powers of a board of supervisors to repeal or amend the state-declared policy. . . . The *board cannot escape the duty imposed upon it* by the state through the medium of declining to act. . . ." (Emphasis added.) Since a specific mandatory obligation has been imposed on the county by the Legislature to provide suitable quarters for the courts in that county, the present facilities are not adequate, and the board of supervisors has determined that the proposed construction is necessary, we have an express law-imposed obligation on the county which is not general, as in the Pacific Undertakers and Goldsmith cases, and the debts incurred in the performance of that duty are not within the debt limitation.

Second, there is no substantial distinction between the problem here and that involved in *Dean* v. *Kuchel*, 35 Cal.2d 444 [218 P.2d 521], and *City of Los Angeles* v. *Offner*, 19 Cal. 2d 483 [122 P.2d 14, 145 A.L.R. 1358]. In the Dean case, the state debt limitation was raised (Cal. Const., art. XVI, § 1), the state owned the land which it leased to a private corporation which agreed to construct a building thereon and lease it to the state for a stated monthly "rental" and at the end of the term title vested in the state. Relying upon the Offner case, we held the lease not violative of the debt limitation. In the Offner case, ". . . a contractor agreed to build an incinerator on city owned land which the city leased to him for 10 years at a rental of $1.00 per month, and he leased to the city the land and incinerator to be erected thereon for nine years and nine months, at a specified monthly rental. The city was given an option to buy the incinerator at various intervals during the term of the lease at a minimum price fixed by a schedule. If the city elected to exercise its option the purchase price was to be fixed by appraisers but not less than the minimums. Title to the incinerator was to remain in the contractor and if the option was not exercised it could be removed." (*Dean* v. *Kuchel*, 35 Cal.2d 444, 446 [218 P.2d 521].) We find no rational or substantial distinction between this case and the Dean and Offner cases read together, and we are not disposed to overrule either of those cases.

Percy V. Hammon, a resident and taxpayer of Los Angeles County, a retired member of the retirement association, claiming to be a party in interest and intervener makes numerous contentions with respect to the lease, in addition to the claim that it violates the debt limitation. He asserts that the lease is "invalid and unenforceable" because it is uncertain, in that the plans and specifications for the build-

ing as approved in the lease were still subject to correction, and under the lease no change could be made except by the agreement of the retirement board and county. We will not suppose in this proceeding that the parties will be unable to agree on such corrections as are necessary. It is not a case of no plans or specifications, for there exist the uncorrected ones.

Continuing on the ground of uncertainty, it is claimed that there is no firm agreement that the building will be erected or the rental paid, but only that it shall be built if bids can be obtained from contractors at a price of $6,278,000, and until it is known that it can be built for such price, the retirement funds should not be invested. But it is provided in the lease that if it cannot be built for that figure, the lessor and lessee will redraft the plans. We will not assume in this proceeding they will not so agree. Nor do we know with any degree of certainty that it cannot be built for that figure. These are speculative conjectures as to whether the contract will be performed, which we do not deem appropriate in the proceeding before us, which concerns the legality of the lease and hence the legality of payment under the lease by the retirement board of the architect's and engineer's fees expended by the county in the sum of $170,654.40.

Hammon asserts that the payment of such fees would be in excess of the powers of the retirement board, because there is no assurance under the lease that lessor's investment will be repaid as required by section 31604 of the Government Code. The lease on its face provides that it may be terminated when compliance has been had with section 31604. These and Hammon's other arguments and the posing of numerous and various contingencies that may or may not happen, bearing upon whether the investment will be repaid, are not appropriate for consideration in this proceeding.

The building cannot be built for the figure set forth in the lease, argues Hammon, for prices have risen since then and by a new estimate by his estimator it would cost over $7,000,000 as of December 27, 1950, and the lease will be frustrated. That does not go to the legality of the lease which is the sole question we are deciding. What can or cannot be done or agreed upon between the lessor and lessee is largely a matter of opinion, and is not an issue to decide in this proceeding. That is a matter primarily for the retirement board, the governing body of the association, and the board of supervisors to work out. The present proceeding is not one for

declaratory relief—a declaration of the rights under the lease. The same comments are applicable to Hammon's argument that the investment is not a proper one under the law of trusts.

The lessee-county has no power to grant, as it has in the lease, under certain conditions, to the lessor, an option to buy the land upon which the building is situated, says Hammon, and thus the lease is illegal. But the statute under which the lease was made expressly authorizes granting such an option. "In order to make the provisions of this article relating to the investment of retirement funds completely effective, the board of supervisors of the county in which the retirement system is established is authorized, subject only to the limitations of this article, to lease or purchase or enter into options to purchase real property in which retirement funds have been or are being invested and *to sell or give an option to sell real property to the board.*" (Emphasis added.) (Gov. Code, § 31606, Stats. 1949, ch. 199.)

Since the Los Angeles Planning Commission has approved a master plan for the city with a site for a police building, it is claimed the site now mentioned for the court building is on the police building site, a change in the master plan without approval by the planning commission. It is doubtful that such change would affect the legality of the lease. But in any event, it is a far cry from the issues which we deem are properly before us, involving as it does, the planning commission and the retirement board which are not before the court, and the inadvisability of predicting the final action of the planning commission.

Let the peremptory writ issue as prayed.

Gibson, C. J., Shenk, J., and Schauer, J., concurred.

Traynor, J., and Spence, J., concurred in the judgment.

EDMONDS, J.—The majority of this court concedes that there is no substantial difference between the factual basis of the present case and that shown in *Dean* v. *Kuchel,* 35 Cal. 2d 444 [218 P.2d 521]. For the reasons I expressed in connection with the latter decision (35 Cal.2d at p. 449), I believe that the transaction between the county and the retirement board, although designated a "Lease Agreement with Options to Purchase," is no more than a cleverly designed subterfuge to evade the limitations of article XI, section 18, of the Constitution.

By the terms of the "lease," the county is immediately obligated to pay for the construction of a $6,000,000 building. It may do this in one of two ways. The total amount of the investment, plus 3¾ per cent interest, may be paid in installments under the guise of rent. But the county must continue "rent payments" until it has returned to the retirement board all of the investment with interest. During the next 40 years, should the county desire to discontinue the installment payments it may do so only by exercising its option to purchase.

The option price is computed by "taking the total investment of the Lessor in such Building and reducing such total at the rate of 2% per annum on the remaining balance." The longer the county delays exercising its option, the lower the price becomes but, in the meantime, the monthly installments must be paid. These payments are closely geared to the option price; in one way or another the county must pay for the building. Manifestly, the ultimate purpose of the transaction is for the county to acquire ownership of the building without securing the approval of the electorate.

I would also deny relief in this proceeding upon grounds of public policy. (*Dean* v. *Kuchel, supra,* at p. 454; *City and County of San Francisco* v. *Linares,* 16 Cal.2d 441, 448 [106 P.2d 369].)