[Civ. No. 20089. First Dist., Div. Three. Oct. 29, 1962.]

GUTHRIE McCLAIN et al., Plaintiffs and Appellants, v. COUNTY OF ALAMEDA et al., Defendants and Respondents.

[Civ. No. 20285. First Dist., Div. Three. Oct. 29, 1962.]

BELDEN S. GARDNER, JR., et al., Plaintiffs and Appellants, v. COUNTY OF ALAMEDA et al., Defendants and Respondents.

(Consolidated Cases.)

Cushing, Cullinan, Hancock & Rothert, Harlow P. Rothert, Nichols &· Rogers and Harold E. Rogers, Jr., for Plaintiffs and Appellants.

J. F. Coakley, District Attorney, Douglas R. Dunning, Assistant District Attorney, Richard J. Moore, John A. Lewis, Deputy District Attorneys, Aiken, Kramer & Cummings and Fred Cummings for Defendants and Respondents.

Henry.A. Dietz, County Counsel (San Diego), Joseph Kase, Jr., Deputy County Counsel, Keil & Connolly, William L. Guilfoyle, Hagar, Crosby & Rosson, John A. Nejedly, District Attorney (Contra Costa), Prentice K. Bancroft, Deputy District Attorney, Keith C. Sorenson, District Attorney (San Mateo), Lyle R. Edson, Chief Civil Deputy District Attorney, George F. Holden, County Counsel (Orange), Adrian Kuyper, Assistant County Counsel, Harold W. Kennedy, County Counsel (Los Angeles), George W. Wakefield, Chief Assistant County Counsel, and Joel R. Bennett, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Respondents.

DEVINE, J.— In 1961, the County of Alameda entered into two contracts with the Board of Retirement of Alameda County Employees Retirement Association by which the retirement association agreed to construct a building for the welfare department of the county and an administration building, the county to lease the buildings with an option to purchase. Plaintiff McClain, a taxpayer, seeks to enjoin the contract relating to the welfare building, and plaintiff Gardner seeks to enjoin the administration building contract. Engstrum & Nourse and Stolte, Inc., contracting corporations which are building the welfare building, are joined as defendants. Motion to strike parts of the complaint was granted and demurrer was sustained without leave to amend.

Plaintiffs contend that the two long-term leases are actually contracts of purchase, and that they violate section 18 of article XI of the Constitution of California, which provides: "No county . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. . . ." It is the position of plaintiffs that the lease-option agreements are really contracts of sale and that the lease-option plan is a subterfuge.

 It is further contended by plaintiffs that the agreements are void because the board of supervisors performs functions for both parties, namely, the county and the retirement board, and because a member of the board of supervisors was at the same time a member of the retirement board and participated in the making of the contracts.

Respondents reply that the first issue has been determined by the Supreme Court in the case of *County of Los Angeles* v. *Byram*, 36 Cal.2d 694 [227 P.2d 4], and that if the board of supervisors performs functions for both parties and a member thereof has dual positions, there is nothing illegal about the matter, and, in fact, it is compelled by statute.

In the *Byram* case, a contract for the construction of a court building in the County of Los Angeles was challenged upon the same constitutional ground as is stated here by appellants. In the *Byram* case, the validity of a contract, upon which the agreements in the present case obviously were patterned, was sustained by the court upon two grounds: (1) that the county was obliged by law to provide adequate quarters for courts, and that an obligation imposed by law upon a county is not an indebtedness or liability within the meaning

of the debt limitation provision; and (2) that the lease-option agreement was not by its terms violative of the debt limitation. Respondents claim that the same two reasons which were effective in sustaining the contract in the *Byram* case are equally effective to sustain the contracts under our consideration.

We need not decide whether the first of the two reasons is valid, because we sustain the judgment upon the second. As the court pointed out in *Byram* (at p. 699), "There is no doubt that the duty of providing adequate quarters for courts is mandatory, explicit and imposed by law on the county. It has no choice in the matter." Section 68073 of the Government Code provides that: "In each county the board of supervisors shall provide suitable rooms for holding the superior, municipal and justice courts, for the chambers of judges of said courts. . . ." (At the time of the *Byram* case the statutes were 2 Deering's Gen. Laws, Act 5238, § 22, Stats. 1947, ch. 1101, § 1; Code Civ. Proc., § 144; Gov. Code, § 25351.)

In the *Byram* case (*id.* at pp. 699, 700), the court discussed the subject of general as distinct from explicit duties, and then held that it was the undoubted law that the housing of the courts is a duty specifically imposed upon the board of supervisors. We do not ignore the argument of respondents that a county cannot carry on the functions imposed on it by law without buildings to house the administrators of the law, but because following this argument would require us to declare a new limitation on the application of the section of the Constitution, we abstain from deciding whether the county is exempt from the provisions of section 18 of article XI of the Constitution because of the governmental functions which are to be performed within the buildings.

We find, however, that respondents are sustained by the second reason given by the court in the *Byram* case, namely, that the contracts in their own terms do not violate the constitutional provision. We note, preliminarily, that the second ground of decision in the *Byram* case is not dictum, as suggested in appellants' closing brief. ■ Where two independent reasons are given for a decision, as in the *Byram* case, neither one is to be considered mere dictum since there is no more reason for calling one ground the real basis of the decision than the other. (*Bank of Italy* v. *Bentley*, 217 Cal. 644, 650 [20 P.2d 940]; *Gilgert* v. *Stockton Port Dist.*, 7 Cal. 2d 384, 389 [60 P.2d 847].)

Many of the arguments advanced by respondents are those which were presented to the Supreme Court not only in the

*Byram* case, but also in the earlier cases of *Dean* v. *Kuchel,* 35 Cal.2d 444 [218 P.2d 521]; and *City of Los Angeles* v. *Offner,* 19 Cal.2d 483 [122 P.2d 14, 145 A.L.R. 1358], but it would be unprofitable for us to state them, because if the *Byram* case contract is substantially the same as those before us, the matter has been determined by the highest court of the state. We have compared the contracts and we find them to be substantially the same. We have set down the main provisions of these contracts, in columnar form, in an appendix to this opinion, so that the similar provisions may be seen side by side.

Appellants, indeed, make note of the fact that, in general, the Alameda contracts manifestly were drawn to fit the design of the *Byram* contract. They offer the following distinctions, each of which we find to be unavailing for the reasons given following each statement of appellants' contention: (1) That in the *Byram* case the taxpayers were not represented, the action having been by an architect for writ of mandate to compel the county treasurer to issue a warrant to pay his fee. Of course, we could not diminish the effect of the decision of the Supreme Court by any such consideration and, anyway, the observation of appellants is inaccurate because a taxpayer did intervene in the *Byram* case and filed a 36-page brief. (2) That the decisions in the *Byram* case, and in the case of *Dean* v. *Kuchel, supra,* which *Byram* followed, were influenced by emergency conditions and shortage of available finances. The Supreme Court did not state that these matters had anything to do with its decisions upon a constitutional limitation, and we can give no weight to this contention. (3) That a bond issue for a courthouse had twice been defeated by the voters of Los Angeles County, but the voters of Alameda County were not given an opportunity to vote on bonds for the two buildings. This argument is rather two-edged, but, in any event, this was not given as a reason by the court in the *Byram* case. (4) That in the *Byram* case the court may have determined that both the payments of rent and option prices, which declined over a 50-year period instead of a 28-year period, "were closely enough related to true values to avoid the label of subterfuge." In each case, appellants argue, there is a question of fact to be determined anew, preliminarily by the trial court, and therefore demurrer should not have been sustained without leave to amend.

In this case, say appellants, the option price for purchase in 1981 will be equivalent to 16 months' rent, although the remaining life expectancy will be 30 to 50 years; wherefore,

unless the option price is absurdly low, the yearly payments, denominated rentals, must actually have created a credit upon the purchase price. Thus, they argue, there is an increasing compulsion upon the county every year to exercise the option when it becomes available, and, therefore, a liability is in fact being created. They argue that they are entitled to present these and other facts to the trial court and have its determination as to the true character of the contracts. We do not so read the *Byram* case. In the brief discussion upon the nature of the agreement in that case (*id.* at p. 700), the court did not make a determination upon any balancing of rentals with option prices, but relied upon the *Offner* and *Dean* cases, and it is to be noted that although in the *Offner* case the option price was to be the then appraised value of the property, subject to a certain minimum price, in *Dean* v. *Kuchel* there was no option price at all, except if the state were to make use of an acceleration clause, and it was agreed that the property would belong to the state, the lessee, at the expiration of the 25-year lease. In *Dean* v. *Kuchel,* the court declared that it was the essence of the *Offner* rule that payments are for a month to month use of the building (35 Cal.2d at p. 448). In the *Dean* case, as in the cases before us, the amount which the public body was required to pay, if it chose to pay under the acceleration clause, was almost exactly the total of the remaining rental, as pointed out in the dissenting opinion of Mr. Justice Edmonds (*id.* at p. 450). In the *Dean* case, there was an element pointing toward ownership by the lessee, which is not present in these cases, namely, that in event of destruction of the improvements, the state was obliged to pay for the cost of repairs or reconstruction in excess of proceeds of insurance (*id.* at p. 450).

As the Supreme Court in the *Byram* case found no substantial distinction between that case and the *Dean* and *Offner* cases, read together, so we find no substantial distinction between the cases before us and all three of the cases decided by the Supreme Court, read together.

The motion to strike was directed to a paragraph of the complaint which alleges, in substance, that the contracts are wasteful of the taxpayers' money because financing of the buildings by general obligation bonds would be less costly to the county. Appellants concede, in their briefs, that the determination of such a matter, assuming the legality of both procedures, would .be within the discretion of the board of supervisors, and not subject to review by the courts.

They argue, however, that the matter is relevant to their final point, namely, that in the whole procedure established by the Retirement Act for the investment of retirement funds in public improvements (Gov. Code, §§ 31601-31607), a conflict of interest on the part of the board of supervisors as a whole, and of one member in particular, is created. The claimed conflict of interest is this: Section 31601 of the Government Code provides that a lease-purchase contract entered into by the board of retirement shall be approved by unanimous vote of the board of retirement and by a four-fifths vote of the members of the board of supervisors, acting for the protection of the retirement fund. On the other hand, the board of supervisors acts in its capacity as officers of the county as such. Thus, say appellants, the board of supervisors is charged with the duty of obtaining the best possible investment for the retirement board, and at the same time getting the best possible contract for the county. In particular, one of the members of the board of supervisors is, as permitted by statute (Gov. Code, § 31520), a member of the retirement board itself.

Appellants cite many cases which express the general rule which is based upon the common law (42 Am.Jur., § 59, p. 926) against the exercising of functions of incompatible offices or trusts. There is nothing to prevent the Legislature, however, from allowing, and even demanding, that an officer act in a dual capacity. Section 2230 of the Civil Code allows a trustee even to act adversely to his beneficiary when the latter, having capacity to contract, with full knowledge of the motives of the trustee, and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so; and section 2232 of the Civil Code allows a trustee to undertake another trust adverse in its nature to his beneficiary, if he has the latter's consent. Since these acts of the Legislature allow a trustee, under certain circumstances, even to have an interest personally adverse to that of the beneficiary, certainly the Legislature may, as it has done, establish a carefully planned system whereby counties may have the advantage of financing public improvements by contracts which provide for the use of retirement funds; the retirement funds, on the other hand, having the advantage of prime investments, even though there is imposed upon public officers the duty of creating a contract that is fair to both parties.

The fact that the district attorney acted as counsel for both parties in drawing the contracts, and gave them what-

ever legal advice they required, likewise does not have the effect of invalidating them, although private counsel might have been employed. (Gov. Code, § 31607.)

Appeal from orders granting motion to strike dismissed. Judgments affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 26, 1962.

# APPENDIX

| Byram Contract | Alameda County Contracts |
|---|---|
| 1. County owns the land. | 1. Retirement board owns the land for the administration building; county owns the land for the welfare building. |
| 2. Retirement board has offered to erect a building and to rent it to the county, construction cost to be $6,000,000. | 2. Retirement board will provide administration building at a maximum construction cost of $4,568,026, and welfare building at $2,400,000. |
| 3. Retirement board to pay architect's and engineer's fees. | 3. Retirement board to pay architect's and engineer's fees. |
| 4. Retirement board to lease to county for 50-year term. | 4. Retirement board to lease administration building to county for 30-year term, welfare building for 35-year term. |
| 5. County to pay $25,000 monthly rent. | 5. County to pay $35,000 monthly rent for administration building, $12,500 for welfare building. |
| 6. County to pay ad valorem taxes, special assessments and insurance. | 6. County to pay ad valorem taxes, special assessments and insurance. |
| 7. Retirement board shall keep the building and equipment insured. | 7. Retirement board shall keep the buildings and equipment insured. |
| 8. Either party may terminate lease after return of the retirement board's investment, plus interest (estimated at 40 years). | 8. Either party may terminate lease as provided in section 31603 of the Government Code, which requires return of investment, together with specified rate of interest (estimated at 18 years for administration building, 23 years for welfare building). |

*(Continued on next page)*

## APPENDIX—*Continued*

### Byram Contract

9. County retains title to land unless retirement board exercises its option to purchase. Title to building remains in retirement board unless county exercises its option to purchase.

10. County shall maintain the land and building.

11. Each month's rental to become due only in consideration of right to possess, occupy and use the building during the preceding month, and in event of destruction or damage to building by casualty so that it becomes untenantable, rentals shall cease and shall not accrue again until the building is ready for occupancy.

12. County has option to purchase the building during the term of the lease for the amount of investment by retirement board less 2 per cent per year; if county's option is not exercised, retirement board has option to buy or lease the land at fair market value.

### Alameda County Contracts

9. Administration building: title to land and building remains in retirement board unless county exercises its option to purchase. Welfare building: title to building remains in retirement board unless county exercises option to purchase, but title to land remains in county unless retirement board exercises its option to purchase.

10. County shall maintain the land and buildings.

11. Each month's rental to become due only in consideration of right to possess, occupy and use the buildings in the preceding month, and in event of destruction or damage to buildings by casualty so that they become untenantable, rentals shall cease and shall not accrue again until the buildings are ready for occupancy.

12. Welfare building: county has option to purchase building and equipment on a declining scale of option prices, commencing with the fifth year at $2,200,-000, and ending with the 28th or any subsequent year for $232,000, provided the option must produce an amount not less than retirement board's investment plus interest at rate prescribed in section 31703 of Government Code; if county does not exercise option to purchase, retirement board may purchase building at then fair market value.
Administration building: same terms as apply to welfare building, except amount at end of fifth year is $4,650,000, and at end of 20th year $542,000; county's option is to purchase not only building and equipment, but also the land, which has been owned by retirement board from the beginning.