[Civ. No. 21083.   First Dist., Div. One.   Dec. 6, 1963.]

ANTHONY G. LAGISS, Plaintiff and Appellant, v. COUNTY OF CONTRA COSTA et al., Defendants and Respondents.

Cushing, Cullinan, Hancock & Rothert and Harlow P. Rothert for Plaintiff and Appellant.

John A. Nejedly, District Attorney, and George W. Mc-Clure, Chief Civil Deputy District Attorney, for Defendants and Respondents.

MOLINARI, J.—This is an appeal by plaintiff taxpayer from a judgment in favor of defendants[1] after the sustaining

---

[1]Defendants are the County of Contra Costa, hereinafter referred to as the "County"; the Board of Retirement of the Contra Costa Retire-

of a demurrer to the amended complaint[2] and from the order sustaining said demurrer.[3]

## Question on Appeal

The question on appeal is whether the amended complaint states a cause of action. Implicit in the question is the determination of the validity of a lease entered into between the County and the Board of Retirement, the specific inquiry being directed to whether said lease is in violation of article XI, section 18, of the California Constitution.[4]

## The Complaint

The complaint, as amended, alleges that in the year 1959 the Board of Supervisors determined that two additional floors should be added to the existing Administration Building and that a 12-story annex thereto should be constructed; that the land upon which the present Administration Building is located and upon which the proposed annex will be constructed is owned by the County, and the existing Administration Building is owned by the Retirement Association and is subject to a "Lease Agreement With Options to Pur-

---

ment Association and its members, hereinafter referred to as the "Board of Retirement"; the Contra Costa Retirement Association, hereinafter referred to as the "Retirement Association"; the Board of Supervisors of said County and its members, hereinafter referred to as the "Board of Supervisors"; and the Treasurer, Administrator and Director of Public Works of said County, hereinafter referred to respectively by these designations.

[2]Judgment was entered upon the sustaining of the demurrer to the amended complaint after plaintiff declined the right to further amend his complaint and declared his election to stand upon the amended complaint.

[3]An order sustaining a demurrer with leave to amend is not appealable. (*Sousa* v. *Capital Co.*, 202 Cal.App.2d 221, 223 [20 Cal.Rptr. 598]; *Carley* v. *City of Santa Rosa*, 154 Cal.App.2d 214, 214-215 [315 P.2d 905]; *Jeffers* v. *Screen Extras Guild, Inc.*, 107 Cal.App.2d 253, 254 [237 P.2d 51].)

[4]Art. XI, § 18, in part provides: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof, on or before maturity, which shall not exceed 40 years from the time of contracting the same; . . ."

chase'' made and executed by the Board of Retirement and the County on November 12, 1952; that in 1961 the Board of Retirement determined to invest funds of the Retirement Association in the construction of said addition and annex; and that pursuant to resolutions of the respective Board a "Lease with .Option to Purchase Administration Building Addition'' was executed and entered into on September 26, 1961, by and between the Board of Retirement, as lessor, and the County, as lessee. (A copy of said lease is attached to, incorporated in the complaint, and marked Exhibit A.)[5]

The lease recites that it is entered into between the Board of Retirement, thereinafter called the Lessor-Board, and the County, thereinafter called the Lessee-County. After providing that it supersedes the previous agreement made on November 12, 1952, and after reciting the need for such additional construction, the willingness of the Lessor-Board to make such construction as an investment for itself, and its offer to lease the whole structure to the Lessee-County at its fair market value, the lease provides substantially as follows: that the Lessee-County grants the permission and use of the described land to the Lessor-Board, and the latter agrees to construct said additions referred to therein as the '' 'Building,' '' pursuant to certain plans and specifications at a cost not to exceed $3,000,000 plus $210,000 in architect fees; that the Lessor-Board leases to the Lessee-County the remodelled building with the addition described in the plans and specifications for a term of 25 years beginning on the first day of the second calendar month after the completion of said addition and remodelling; that after the lease has run for a sufficient period to conform with the requirements of Government Code section 31604,[6] either party may terminate the lease upon giving to the other a 24-month written notice; that the

---

[5]Hereinafter referred to as the ''lease.''

[6]§ 31604 provides as follows: ''Before an investment is made in real property the board shall enter into a lease or lease option agreement with the county in which the retirement system is established under which the county agrees to rent the property at a monthly rental and for a period, not to exceed fifty years, sufficient to return not less than the investment together with interest at the rate prescribed in Section 31603. The agreement may contain an option or options to purchase provided such option together with the rentals will return not less than the investment together with interest at a rate 3/4 per cent higher than the rate fixed by Section 31591 of this Code or in the event a different rate has been determined by the board then 3/4 per cent higher than the rate so determined at the time the agreement is made. In the event a

monthly rental is $21,590 for the first 130 months of the lease and $17,538 per month for the remaining 170 months; that the rental payments are to be recalculated as of the date of the beginning of the lease after the Lessor-Board's exact total costs and the unamortized value of the lease dated November 12, 1952, have been determined; that the recalculated rent shall be sufficient to return the total investment plus interest at the rate of 5 per cent of the total cost of the work and 3.5 per cent upon the unamortized value of the previous lease dated November 12, 1952; that as part of the rent, the Lessee-County agrees to pay an additional amount equivalent to the ad valorem taxes, ad valorem and specific lien special assessments, and the insurance premiums on specified insurance coverage on the building against fire, theft, general liability and property damage; that the Lessee-County agrees to pay the costs of construction as might be in excess of the legal limitation of investment in real property by the Lessor-Board, and that such payments shall not be included in the Lessor-Board's total investment for the purpose of recalculation of rental payments; that title to the site shall remain in the Lessee-County unless the Lessor-Board exercises its option to purchase the same as in said lease provided; that title to the building and all the structural additions shall remain in the Lessor-Board unless the Lessee-County exercises its option to purchase the same as in said lease provided;[7] that during such times as the Lessee-County is in possession of the building all maintenance and repair shall be the responsibility of the Lessee-County; that each month's rental payment is due only so long as the building is available for use, and if it becomes untenantable, rentals shall cease; that in the event of condemnation by a superior public use, the Lessor-Board is to receive the entire award for the building and the Lessee-County is to receive the entire award for the site; that in consideration of the sum of $1.00 the Lessor-Board grants to the Lessee-County an option to purchase the building after giving the Lessor-Board 12 months' written notice, and tendering within said period the purchase price therefor; that said purchase price shall be the amount opposite the calendar year in which the option is ex-

building is built on county-owned land the agreement may contain an option to purchase the land at any time or at the termination of the lease at its then fair market value.''

[7] The lease also contains provisions as to the title to fixtures placed in the building.

crcised, as shown by a schedule designating such payments (these payments are set at $3,489,338 in 1965 and decline in set amounts from year to year until the year 1989, when said price is the sum of $1.00) ; and that the Lessee-County grants to the Lessor-Board the exclusive option to purchase or lease the site only in the event that the option to purchase the building has not been exercised by the Lessee-County as provided in the lease, the option price being the then fair market value of the site.

The said lease contains two amendments, subsequently entered into by the parties, providing for the payment by the Lessor-Board of architect fees in the sum of $227,500 and providing for a maximum cost for the construction work in the sum of $3,350,000.

The amended complaint alleges further: that the building has an estimated reasonable life expectancy in excess of 50 years; that under said lease, the County has incurred an indebtedness and liability in an aggregate sum greater than the total of $3,000,000 plus the unamortized value of the prior lease dated November 12, 1952; that the aggregate indebtedness and liability incurred pursuant to said lease will exceed the income and revenue of the County provided for the fiscal year 1961-1962; that the indebtedness and liability incurred by the County pursuant to said lease, which exceeds the amount permitted by article XI, section 18, of the California Constitution, has not been approved by two-thirds of the electors, as therein provided; that an election was held in Contra Costa County on November 4, 1958; that at that time the voters turned down a proposed $1,000,000 bond issue which was to be used for the building in question; and that said lease is null and void because it is contrary to the provisions of the California Constitution aforesaid.

It is futher alleged in the amended complaint that: the fair rental value of the building is, and will be, substantially less than the amount of monthly rental provided in said lease; that the scheduled option prices provided for in said lease are, and will be, substantially less than the fair market value of the building in each respective year; that the entering into and execution of said lease, and the amendments thereto, "was not done in good faith but was done as a subterfuge to enable the County of Contra Costa to purchase and acquire" said building and the additions thereto "in the form of, and under the guise of, a purported lease with option to purchase, by the payment of monthly amounts of

purported rent for a period of approximately 26 years'';
and that in making and entering into said lease and the
amendments thereto the Board of Supervisors and the Board
of Retirement abused their discretion, exceeded the powers
given them by law, and violated article XI, section 18, of the
California Constitution.

The amended complaint also alleges, in the alternative,
that if it be deemed that the aggregate sums due and payable
pursuant to said lease are not a present indebtedness of the
County, then the lease is void because it fails to comply with
the requirements of section 31604 of the Government Code
providing that in any lease-purchase contract the County
must agree to make payments sufficient to return to the Re-
tirement Association a total sum of not less than its invest-
ment plus interest.

A further allegation is made in the amended complaint
that both the lease and section 31601 of the Government
Code,[8] pursuant to which the approval of the investment was
made, are void because of the antagonistic and conflicting
duties imposed on the Board of Supervisors in that it is
subject to the trust of obtaining for the Retirement Associa-
tion the highest possible interest rate consistent with the
safety of invested funds, while its trust on behalf of the
County is to acquire public improvements at the lowest pos-
sible cost and interest rate. Attached to the amended com-
plaint is an exhibit purporting to be an appraisal pursuant
to section 31603 of the Government Code as to whether the
fair rental value is sufficient to return to the Board of Re-
tirement the investment with interest as fixed by section
31591 of said code. Said appraisal estimates 25-1/2 years as
the period during which said investment and interest will be
returned.

Upon the basis of the foregoing amended complaint plain-
tiff prayed for a writ of mandate directing defendants to
comply with article XI, section 18, of the California Consti-
tution by refraining to take bids or entering into any con-
tract for the said building construction, by ceasing and re-
fraining from taking any further action, work or proceedings
with respect to said lease, by cancelling said lease, and by the

---

[8]§ 31601 provides: ''No investment shall be made in real property
unless it is approved by unanimous vote of the board and a four-fifths
vote of the members of the board of supervisors of the county in which
the system is established.'' (In § 31459 ''board'' is defined to mean
''the board of retirement.'')

refusing to audit and approve any payment of sums pursuant to said lease. An injunction requiring defendants to cancel said lease and to refrain and cease from entering into any act, work, or contract pursuant thereto was also prayed for. A general demurrer to said amended complaint was filed by defendants, and it was sustained with 10 days leave to amend. Plaintiff declined to amend and elected to stand on his complaint as amended. Judgment was thereupon entered in favor of defendants and against plaintiff, from which judgment plaintiff now appeals.

### Validity of the Lease

The nub of the question presented to us is whether the subject lease contravenes and violates article XI, section 18, of the California Constitution which provides, in essence, that no county shall incur any indebtedness or liability in any manner exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the qualified voters of that county. This constitutional provision was enacted to prevent the improvident creation of inordinate debts which might be charged against taxpayers in ever increasing volume from year to year. (*McBean* v. *City of Fresno,* 112 Cal. 159, 164 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794].)

This constitutional provision has been subjected to the scrutiny of the appellate courts of our state in several cases involving leases and agreements containing options to purchase executed by counties, municipal corporations, and other local agencies. (See *City of Los Angeles* v. *Offner,* 19 Cal.2d 483 [122 P.2d 14, 145 A.L.R. 1358]; *County of Los Angeles* v. *Byram,* 36 Cal.2d 694 [227 P.2d 4]; *City of Montclair* v. *Donaldson,* 205 Cal.App.2d 201 [22 Cal.Rptr. 842]; *McClain* v. *County of Alameda,* 209 Cal.App.2d 73 [25 Cal.Rptr. 660]; *City of La Habra* v. *Pellerin,* 216 Cal.App.2d 99 [30 Cal.Rptr. 752]; see also *Dean* v. *Kuchel,* 35 Cal.2d 444 [218 P.2d 521].) The rule applied in all of these cases is that stated in the *Offner* case as follows: "[I]f the lease or other agreement is entered into in good faith and creates no immediate indebtedness for the aggregate installments therein provided for but, on the contrary, confines liability to each installment as it falls due and each year's payment is for the consideration actually furnished that year, no violence is done to the constitutional provision. [Citations.] If, however, the instrument creates a full and complete liability upon its

execution, or if its designation as a 'lease' is a subterfuge and it is actually a conditional sales contract in which the 'rentals' are installment payments on the purchase price for the aggregate of which an immediate and present indebtedness or liability exceeding the constitutional limitation arises against the public entity, the contract is void. [Citations.] The rule as applied to each of these situations is well stated in *Garrett* v. *Swanton, supra,* at page 226 [216 Cal. 220 (13 P.2d 725)], as follows: 'The law is well settled in this state that installment contracts of any kind, where the installment payments are to be made over a period of years and are to be paid out of the ordinary revenue and income of a city, *where each installment is not in payment of the consideration furnished that year,* and the total amount of said installments when coupled with the other expenditures exceeds the yearly income, are violative of the constitutional provision in question unless approved by a popular vote. This is so whether the contract be denominated a mortgage, lease, or conditional sale. . . .' '' (P. 486.)

In *Offner,* the city agreed to lease for nine years and nine months an incinerator under a contract giving it an option to purchase at a price to be determined by independent appraisal at the time the option was exercised. The city owned the site and planned to lease it to the contractor for 10 years and the contractor agreed to lease back the premises with the incinerator at a rental price specified in the bid. Title was to remain in the contractor unless the city elected to exercise the option. If, at the end of the nine year and nine month lease, the city had not exercised the option, the contractor was given a limited time in which he could remove the incinerator. It was contended that the agreement amounted to an installment contract for the purchase of the incinerator over a period of nine years and nine months and so violated article XI, section 18, of the Constitution. In holding that the agreement was a valid lease, the court noted that the rental payments were for a definite amount to be determined by competitive bidding; that at no time was the city to have the opportunity to purchase the incinerator at less than its then fair market value and that ''the city is not required to exercise the option in order to protect its prior investment in the form of rental payments. The rental payments are intended to represent the fair rental value of the incinerator and the option purchase price is intended to represent the then fair value of the incinerator itself.'' (P. 487.)

A similar question was presented in *Dean,* which involved article XVI, section 1, of the California Constitution. That section prohibits the Legislature from creating a debt exceeding $300,000 without voter approval. In *Dean,* the state entered into an agreement with a private company whereby the state being the owner of real property, for the consideration of $1.00, let said property to the company for 35 years. The company thereby agreed to erect a building on the property and lease it to the state for a term of 25 years at a monthly " 'rental' " of $3,325. The contract provided that the rental is paid " 'for and in consideration of the use and occupancy of the said real property, buildings and other improvements which the State receives and in consideration of the continued quiet use and enjoyment thereof. . . .' " (P. 445.) In said agreement the state was given the option to terminate the lease on the expiration of 15 years provided certain amounts had been paid to the company according to a specified schedule. It was further provided that upon the expiration of the 25-year building lease, all covenants having been performed, the 35-year ground lease ended and " 'all right title and interest in and to said real property and in and to all buildings situated thereon shall vest in the State.' " (P. 446.) The Supreme Court, relying upon *Offner,* held that the contract was a lease and not an installment contract for purchase. The reviewing court stated that it saw no distinction between the case before it and the *Offner* case, even though in the latter there was an option to purchase rather than a vesting of title at the end of the term. The court went on to say: "[A]s far as liability is concerned, the state under the instrument here is in a better position, for it gets title without the payment of anything other than the rental. The essence of the *Offner* rule is that the payments are for a month to month use of the building. Here it is clearly stated that the rentals are for that purpose." (Pp. 447-448.)

In *Byram,* the County of Los Angeles, as in the present case, entered into a contract with the retirement board of said county. The contract was for the construction by the board of a court building with a lease thereof to the county with an option to purchase. It was likewise contended in *Byram* that article XI, section 18, of the California Constitution was violated. This contention was rejected by the Supreme Court for two reasons: First, because the obligation to house courts is a duty specifically imposed by law upon the county and therefore is not a debt or liability within the

contemplation of the Constitution; and, second, that the lease-option agreement in question was not by its terms violative of the debt limitation provision of the Constitution. The Supreme Court noted that it found ''no rational or substantial distinction between this case and the *Dean* and *Offner* cases read together. . . .'' (P. 700.)

The lease in the instant case is obviously patterned after the contract discussed and considered in the *Byram* case. That such is the case is contended by defendants, who assert in their brief that they ''properly relied on and closely followed the decision'' in *Byram*. A comparison of the main provisions of the contract in *Byram* and those in the contract before us is set out in the footnote[9] so that the similar provi-

---

[9]These provisions are as follows:

### COMPARISON

| *Byram Contract* | *Contra Costa County Contract* |
|---|---|
| 1. County owns the land. | County owns the land. Board of Retirement owns existing building to which additions are to be made. |
| 2. Retirement board has offered to erect a building and to rent it to the county, construction cost to be $6,000,-000. | Board of Retirement has offered to construct additions to a present building owned by it and presently leased to County, and an annex thereto; and to rent the building as altered and the annex to the County. Construction cost to be $3,350,000. County to pay costs in excess of Board of Retirement's legal limitation of investment. Previous lease to be superseded by this lease. |
| 3. Retirement board to pay architect's and engineer's fees. | Same. |
| 4. Retirement board to lease to county for 50-year term. | Board of Retirement to lease to County for 25-year term. |
| 5. County to pay $25,000 monthly rent. | County to pay $21,590 monthly for first 130 months and $17,538 for the remaining 170 months, subject to recalculation upon ascertainment of exact total costs and unamortized value of prior lease. |
| 6. County to pay ad valorem taxes, special assessments and insurance premiums paid by lessor. | Same. |
| 7. Retirement board shall keep the building and equipment insured. | *County* shall keep the building and equipment insured as well as provide a general liability policy. |
| 8. Either party may terminate lease after return of the re- | Either party may terminate lease after it has run for a sufficient |

sions may be seen side by side. This procedure was followed in *McClain,* recently decided.[10] In *McClain,* the County of Alameda entered into two lease-option contracts with the board of retirement by which the retirement association agreed to construct a building for the welfare department and an administration building, the county to lease the buildings with an option to purchase. In consolidated actions brought by two taxpayers to enjoin these contracts the trial court sustained demurrers to the complaints without leave to amend. It was there contended, as in the instant case, that the two leases were actually contracts of purchase and that the lease-option plan was a subterfuge. In affirming the judgment, the appellate court compared the contracts before it

| | |
|---|---|
| tirement board's investment, plus interest (estimated at 40 years). | period to conform with requirements of Gov. Code § 31604, i.e., after a return of investment, together with specified interest as provided in Gov. Code § 31603 (estimated at 25½ years). |
| 9. County retains title to land unless retirement board exercises its option to purchase. Title to building remains in retirement board unless county exercises its option to purchase. | Same. |
| 10. County shall maintain the land and building. | Same. |
| 11. Each month's rental to become due only in consideration of right to possess, occupy and use the building during the preceding month; responsibility of retirement board to provide building at all times. | Each month's rental to become due only in consideration of right to possess, occupy and use the building during the preceding month; in event of destruction or damage to building by casualty so that it becomes untenantable, rentals shall cease and shall not accrue again until the building is ready for occupancy. |
| 12. County has option to purchase the building during the term of the lease for the amount of investment by retirement board less 2 percent per year; if county's option is not exercised, retirement board has option to buy or lease the land at fair market value. | County has option to purchase the building on a declining scale of option prices commencing at $3,489,338 in 1965 to $1.00 in 1989, provided the option must produce an amount not less than Board of Retirement's investment required by Gov. Code § 31604; if County does not exercise option to purchase, Board of Retirement has option to purchase or lease the land at the fair market value. |

[10]The main provisions of the *McClain* contract were compared with those in *Byram* in an appendix to *McClain.* (209 Cal.App.2d pp. 80-81.)

with the *Byram* case contract, and, in concluding that they were substantially the same, stated: ''As the Supreme Court in the *Byram* case found no substantial distinction between that case and the *Dean* and *Offner* cases, read together, so we find no substantial distinction between the cases before us and all three of the cases decided by the Supreme Court, read together.'' (P. 78.)

Comparing the lease in the present case with the contracts considered in *Byram* and *McClain,* and reading the *Offner, Dean* and *Byram* cases together, we likewise find no substantial difference between the lease before us and the contracts in *Byram* and *McClain.* The only noteworthy difference between *Byram* and the contracts in *McClain* and in the instant case is that in the *Byram* case the county had the option to purchase the building during the term of the lease for the amount of the investment by the retirement board, less 2 percent per year, while in *McClain* and in the case at bench the county had the option to purchase the buildings on a declining scale of option prices.[11] In the instant case, the exercise of the option by the County in the final year by the payment of the sum of $1.00 is equivalent to the obtaining of title by the County by the payment of the aggregate rentals provided for in the lease as in the *Dean* case. The payment of said sum of $1.00 offsets the $1.00 consideration paid by the County for the option to purchase, the net result being that by exercising such option during the final year of the lease the County acquires the buildings for a sum equal to the aggregate rents paid during the term of the lease. ▮ As pointed out in *Dean,* the vesting of title at the end of the term without the payment of anything other than the rentals under the lease does not disqualify the instrument as a lease for the purpose of the debt limitation.

▮ The amended complaint does not allege, nor is the contention made by plaintiff, that the total rental payments in any fiscal year exceed the income and revenue provided for such year, but the allegation made is that the aggregate payments to be made by the County during the entire term of the lease will exceed the income and revenue of the County for the fiscal year 1961-1962. There is no provision, in the lease, however, by which the entire sums due over a period of 25 years may become due and payable at any one time; nor

---

[11]In *McClain*: from $2,200,000 in the fifth year to $232,000 ending with the 28th or any subsequent year; in the instant case: from $3,489,338 in the first year to $1.00 in the last year.

does the lease create an immediate indebtedness for the aggregate amount of the installment rent due. The liability created under the lease is month by month for the consideration furnished by the lease in each month, and the total payments each year are for the consideration actually promised that year and within the financial ability of the County to pay without exceeding the debt limitation provided for in the California Constitution. We hold, therefore, that the lease in the case at bench does not, on its face and by its terms, violate the constitutional provision in question.

## No Cause of Action Is Stated

Plaintiff contends that, although the instant lease may not be invalid on its face, the amended complaint, nevertheless, states a cause of action based on sufficient allegations, good as against a general demurrer. Turning to the amended complaint in the case at bench we find that, aside from the averments alleging the entering into and the execution of the lease-option in question, it alleged as follows: that "[t]he reasonable fair monthly rental value of said . . . [buildings] during each month of the period of said [lease] . . . is, and will be, substantially less than the amount of monthly rental provided by said [lease] . . . to be paid for each said month during said period"; that "[t]he respective amounts provided in said [lease] . . . as the purchase price to be paid by the [County] . . . in each year during the period from 1977 to 1989, inclusive, in the event the [County] . . . exercises the option to purchase granted in said . . . [lease], are, and each of them is and will be, substantially less than the fair market value of said . . . [buildings] in each respective said year during said period"; that the entering into and execution of said lease "was not done in good faith but was done as a subterfuge to enable the [County] . . . to purchase and acquire said . . . [buildings] in the form of, and under the guise of, a purported lease with option to purchase, by the payment of monthly amounts of purported rent for a period of approximately 26 years"; that "[i]n making and entering into said [lease] . . ., the said Board of Supervisors and the said Board of Retirement, and each of them, abused their discretion in said matters, exceeded the powers given to them by law, and violated the duties enjoined upon them by Article XI, Section 18, of the Constitution of the State of California"; that "[i]f it be deemed that the aggregate sums due and payable by the [County] . . . to the Retirement

Board . . . are not a present indebtedness of the County, then said [lease] . . . is void because it fails to comply with the requirements of Section 31604 of the Government Code'' in that the County does not in said lease ''agree to make payments sufficient to return to the Retirement Association a total sum of not less than its investment plus interest''; and that section 31601 of the Government Code and the lease are void because under said section the Board of Supervisors have ''antagonistic and conflicting duties'' in that, ''in discharging its trust on behalf of the County'' said Board has the duty ''to acquire public improvements at the lowest possible cost and interest rate,'' and that ''in discharging its trust to the Retirement System'' is has the duty ''to secure the highest possible interest rate consistent with safety on invested funds.''

█ A taxpayer in his representative capacity can sue a county or a municipality only in cases involving fraud, collusion, ultra vires, or a failure on the part of the governmental body to perform a duty specifically enjoined. (*Silver* v. *City of Los Angeles,* 57 Cal.2d 39, 40-41 [17 Cal.Rptr. 379, 366 P.2d 651]; *Nickerson* v. *County of San Bernardino,* 179 Cal. 518, 522 [177 P. 465].) █ Accordingly, legislative or discretionary activity on the part of a county or municipal body is subject to judicial inquiry and interference, even though such body's determinations and proceedings are proper upon their face, if such body exceeds its legislative powers, or if its judgment or discretion is fraudulently or corruptly exercised, or its actions are tainted by fraud or bad faith. (*Nickerson* v. *County of San Bernardino, supra,* pp. 522-523; *Maxwell* v. *City of Santa Rosa,* 53 Cal.2d 274, 277-278 [1 Cal.Rptr. 334, 347 P.2d 678]; *Wirin* v. *Parker,* 48 Cal.2d 890, 894 [313 P.2d 844]; *Simpson* v. *City of Los Angeles,* 40 Cal.2d 271, 276 [253 P.2d 464]; *Babcock* v. *Community Redevelopment Agency,* 148 Cal.App.2d 38, 49 [306 P.2d 513]; *People* v. *Lagiss,* 160 Cal.App.2d 28, 32 [324 P.2d 926]; Code Civ. Proc., § 526a; 18 McQuillin, Municipal Corporations (3d ed., 1950) § 52.07, p. 23.) █ In order to present such an issue, however, it must be pleaded (*Maxwell* v. *City of Santa Rosa, supra,* at p. 279; *People* v. *Lagiss, supra,* at p. 33; *Babcock* v. *Community Redevelopment Agency, supra,* at p. 49); and, when pleaded, must specifically allege the facts constituting such fraud, bad faith, abuse of discretion, corruption, collusion, or such ultra vires, or illegal activity. (*Silver* v. *City of Los Angeles, supra,* p. 41; *Maxwell* v. *City*

*of Santa Rosa, supra,* pp. 279-281; *People* v. *Lagiss, supra,* p. 33; *Lavine* v. *Jessup,* 161 Cal.App.2d 59, 69 [326 P.2d 238]; *People* v. *Milton,* 35 Cal.App.2d 549, 552 [96 P.2d 159].)

Bare allegations of bad faith, abuse of discretion and that the defendants acted in excess of their authority are not sufficient. (*People* v. *Lagiss, supra,* at p. 33; *People* v. *Thomas,* 108 Cal.App.2d 832, 835-836 [239 P.2d 914].) In the instant case the allegations as to bad faith, abuse of discretion and excess of authority are not pleaded in specific language descriptive of the facts which are relied upon to constitute such conduct, except insofar as such allegations may be read with other averments in the amended complaint. These averments, asserts plaintiff, are those which allege that the Board of Supervisors and the Board of Retirement entered into and executed said lease as a subterfuge for the purchase of the subject building by payment of purported rental payments which exceed the true rental value of the building and the payment of option prices which are fixed at amounts sufficient only to return the investment plus interest.

As hereinabove discussed, the type of transaction herein drafted is one countenanced by the Supreme Court as not violative of the constitutional provision. It is also recognized and authorized by the Legislature. In section 31594 of the Government Code[12] moneys of the retirement system may be invested as specifically authorized in section 31595. In subdivision (e) of said section it is provided that retirement funds may be invested in ''Real property or improvements constructed or to be constructed on real property when such real property or such improvements are acquired for sale or lease to a county of this State and subject to the limitations of this article.'' These limitations, substantially, are those which require the approval of the Board of Retirement and the Board of Supervisors (§ 31601, fn. 8, *ante*); provided that no investment in real property shall be made unless the assets of the retirement system exceed $1,000,000 and are not in excess of 25 per cent of the assets of the retirement system (§ 31602); require the appointment of appraisers to examine the property or the plans and specifications of any building proposed to be erected and who shall determine whether the project in their opinion will have a fair rental value sufficient to return the investment together with specified interest

---

[12]All statutory references hereinafter are to the Government Code unless otherwise specified.

(§ 31603) ;[13] provide that before an investment is made in real property the Board of Retirement shall enter into a lease or lease option agreement with the county in which the retirement system is established under which the county agrees to rent the property at a monthly rental and for a period, not to exceed 50 years, sufficient to return not less than the investment together with interest at the rate prescribed in section 31603; require that where the agreement contains an option to purchase, such option together with the rentals will not return less than the investment together with interest at a rate three-fourths percent higher than the rate fixed by section 31591; and provide that in the event a building is built on county-owned land the agreement may contain an option to purchase the land at any time or at the termination of the lease at its then fair market value. (§ 31604, fn. 6, *ante.*)

It is apparent that a lease-option agreement complying with the provisions of the Government Code is a legal method by which moneys of the retirement system may be invested in real estate. Entering into such a lease-option agreement has the legislative sanction both as to countries and their retirement systems. These provisions, when read with the Supreme Court decisions hereinabove discussed, clearly indicate that such a lease-option agreement is not a subterfuge, but, to the contrary, a legitimate financial transaction, not repugnant to the constitutional provision in question and one into which both the County and the Board of Retirement may enter intentionally and in order to arrive at a predetermined result in conformity with the spirit and purpose of the law. ▮ Insofar as the Board of Retirement is concerned, all that is required is that, in compliance with the Government Code, it receive a return of its investment plus the prescribed interest. There is no requirement that it receive the fair market

[13]§ 31603 provides: ''Before an investment is made in real property the board and the board of supervisors of the county in which the system is established shall each appoint an appraiser who shall examine the property or the plans and specifications of any building proposed to be erected and who shall determine whether the project in his opinion will have a fair rental value sufficient to return the investment together with interest at a rate $\frac{1}{4}$ per cent higher than the rate fixed by Section 31591 of this code (or in the event a different rate has been determined by the board then $\frac{1}{4}$ per cent higher than the rate so determined at the time the appraisal is made) over a period not to exceed fifty years, which appraisal shall specify the shortest period of lease in which in the opinion of the appraiser such investment and interest will be returned.''

value of any building it may have constructed pursuant to the agreement at such time as the option to purchase is exercised by the County. ██ On the part of the County, on the other hand, its obligation is to pay a monthly rental for a period (not exceeding 50 years) sufficient to return to the Board of Retirement its investment plus interest. There is no requirement that the County pay a "reasonable rental" as such term is generally understood in legal parlance as applied to the ordinary business activity. We are not dealing here with transactions between private individuals or between a public body and a private individual, but with a particular financial transaction between public agencies in the same county sanctioned by specific statutory law. The requirement of "fair rental value" specified in section 31603 is restricted to whether in the opinion of the appointed appraisers the project will produce a return of the Board of Retirement's investment plus interest. The basis of such appraisal is the ascertainment of the shortest period of lease in which, in the opinion of the appraisers, such investment and interest will be returned. The reports of the appraisers, attached to the amended complaint in the present case, show affirmatively that such an opinion and specification were rendered. In the amended complaint, in the instant case, there are no facts alleged showing that the Board of Retirement will not receive a return of its investment plus interest; to the contrary, the amended complaint and the provisions of the lease show that the monthly rental value therein provided is sufficient to provide such a return. ██ Moreover, there is a presumption in favor of defendants' proceedings. (Code Civ. Proc., § 1963, subd. 15.) ██ Accordingly, as to the matters committed by statute to the respective boards, their determination involved both legislative action and the exercise of discretion, neither of which is subject to review or control of any court in the absence of allegations specifically descriptive of acts indicating an excess of legislative powers on the part of the respective board or that its judgment or discretion is being exercised fraudulently, corruptly, or in bad faith. (*Nickerson* v. *County of San Bernardino, supra,* 179 Cal. 518, 522-523; *Silver* v. *City of Los Angeles, supra,* 57 Cal.2d 39, 41.) Such allegations are absent in the case at bench.

We are thus left with the allegation respecting the claimed conflict of interest on the part of the Board of Supervisors. The very same contentions made by plaintiff here were made

in *McClain*. The appellate court there held that "[t]here is nothing to prevent the Legislature . . . from allowing, and even demanding, that an officer act in a dual capacity." (P. 79 of 209 Cal.App.2d.) The rationale of the reviewing court in *McClain* was that the Legislature "may, as it has done, establish a carefully planned system whereby counties may have the advantage of financing public improvements by contracts which provide for the use of retirement funds; the retirement funds, on the other hand, having the advantage of prime investments, even though there is imposed upon public officers the duty of creating a contract that is fair to both parties." (P. 79.)

The judgment is affirmed, and the appeal from the order sustaining the demurrer with leave to amend is dismissed.

Bray, P. J., and Sullivan, J., concurred.